In re **WESTERN WHOLESALE LIQUOR COMPANY, a corporation,**

v.

**GIBSON WINE COMPANY, a corporation.**

**Civ. No. 72–5037.**

United States District Court,
D. South Dakota.

Feb. 20, 1974.

Morton R. Wilkins, Jr., Rapid City, S. D., for Western Wholesale Liquor Co.

Joseph M. Butler, Rapid City, S. D., for Gibson Wine Co.

## MEMORANDUM OPINION

BOGUE, District Judge.

This is an antitrust action which was tried to the Court on January 14, 1974. Plaintiff alleges that the defendant has violated Section 1 of the Sherman Antitrust Act, 15 U.S.C.A. § 1. The Plaintiff makes no claim for breach of contract or unfair competition herein.

The Gibson Wine Company, the defendant, is a California cooperative established by a group of grape farmers. In 1970 an agreement was reached between the plaintiff, Western Wholesale Liquor Company, and the defendant, whereby the plaintiff would purchase certain products from the defendant and market them in western South Dakota. The agreement was oral and was concededly terminable at will by either party. That fact has very little significance in antitrust litigation. *See*, Poller v. Columbia Broadcasting System, Inc., 284 F.2d 599 rev'd 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The defendant, from the beginning of the relationship with the plaintiff, was extremely interested in entering the whole South Dakota market. The plaintiff limits its sales efforts to western South Dakota only. From the beginning of the relationship between the parties, the defendant has made an effort to find a distributor in eastern South Dakota.

In 1972 Famous Brands, a wholesale liquor distributor, expressed an interest in distributing the defendant's products. It is Famous Brands that the plaintiff contends conspired with the defendant, although it has not been made a defendant herein. Famous Brands would agree to distribute the defendant's products but only on a statewide basis. After some efforts to persuade Famous Brands to limit its distribution to eastern South Dakota, Gibson Wine terminated its agreement with Western Wholesale and reached one with Famous Brands. That agreement called for Famous Brands to distribute the defendant's products on a statewide basis.

## REFUSAL TO DEAL

The cases regarding refusals to deal have caused some confusion. It is still basically the law in this country that a company can deal and refuse to deal with whomever it pleases. United States v. Colgate, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). However, this right is more apparent than real. *See*, United States v. Parke-Davis & Co., 326 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). The case of Connecticut Importing Company v. Frankfort Distilleries, 101 F.2d 79 (2nd Cir. 1939) stands for the proposition that one cannot refuse to deal for an illegal purpose. The defendant therein refused to deal because the plaintiff was not following a retail price maintenance-price fixing plan. At any rate, refusals to deal or certain territorial restrictions alone and without more are not *per se* violations of the Sherman Antitrust Act. *See* United States v. Parke-Davis & Co., *supra*; United States v. Arnold Schwinn & Co.,

388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The *Schwinn* case involved restrictions by a bicycle manufacturer as to dealers and dealers' territories and is very enlightening. The Court said the following:

> "The antitrust outcome does not turn merely on the presence of sound business reason or motive. Here, for example, if the test of reasonableness were merely whether Schwinn's restrictive distribution program and practices were adopted 'for good business reasons' and not merely to injure competitors, or if the answer turned upon whether it was indeed 'good business practice,' we should not quarrel with Schwinn's eloquent submission or the finding of the trial court. But our inquiry cannot stop at that point. Our inquiry is whether, assuming nonpredatory motives and business purposes and the incentive of profit and volume considerations, the effect upon competition in the marketplace is substantially adverse. The promotion of self-interest alone does not invoke the rule of reason to immunize otherwise illegal conduct. It is only if the conduct is not unlawful in its impact in the marketplace or if the self-interest coincides with the statutory concern with the preservation and promotion of competition that protection is achieved." 87 S.Ct. 1863–1864.

The Court in *Schwinn* continued with the following discussion which relates directly to the issues considered herein:

> "At the other extreme, a manufacturer of a product other and equivalent brands of which are readily available in the market may select his customers, and for this purpose he may 'franchise' certain dealers to whom, alone, he will sell his goods. (Citations omitted). If the restraint stops at that point—if nothing more is involved than vertical 'confinement' of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act. It is within these boundary lines that we must analyze the present case." 87 S.Ct. 1864.

It is within these guidelines that this Court must analyze the evidence presented to it.

## ANTICOMPETITIVE EFFECTS

This Court must therefore examine the effects upon the complained of conduct upon the marketplace. Certainly one effect is the fact that the defendant's products will now have entered the market upon a statewide basis. Previous to the defendant's arrangement with Famous Brands, the defendant's wines were not able to penetrate the market in the eastern section of the state of South Dakota and competition in that area must have been lessened thereby. Seventy-five percent of the wine business in South Dakota is in the eastern section. It now appears that Gibson Wines are able to be distributed not only in the western regions of South Dakota, but throughout the length and breadth of the state of South Dakota. This certainly is not an anticompetitive effect. Furthermore, the plaintiff herein is still able to distribute other brands of wine, which brands include dessert wines. It was established by the plaintiff's testimony that Gallo, Guild, Franzia and Roma are all competitors of Gibson Wines and that Western Wholesale was still distributing these products after the termination of the Gibson franchise to Western Wholesale. These brands are roughly equivalent to the Gibson brands and compete with the Gibson brand throughout the market area. The Supreme Court in the *Schwinn* case did say that as long as there were equivalent brands available in the market area that a distributor had a right to franchise or sell to whatever customer he felt he wanted to or he felt would best serve his business purposes.

While it cannot be denied that Western Wholesale Liquors will suffer a serious loss of business by the loss of the Gibson Wines franchise, the injury

to a particular competitor in the marketplace is not and does not create a violation of the Sherman Act. The refusal to deal becomes illegal under the Antitrust Acts only when it produces an unreasonable restraint of trade such as price fixing or the elimination of competition. The United States v. Philadelphia National Bank, 374 U.S. 321, 83 S. Ct. 1715, 10 L.Ed.2d 915 (1963) case, a Clayton Act case, stands for the proposition that the antitrust laws are focused at protecting market structure rather than individual competitors. The case of Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir. 1963) is directly on point. The *Ace Beer* case was concerned with a brewery dropping one distributor and acquiring another in the same market area. The Court in that case said:

> "A manufacturer has a right to select its customers and to refuse to sell its goods to anyone, for reasons sufficient to itself. * * * A refusal to deal becomes illegal under the Act only when it produces an unreasonable restraint of trade, such as price fixing, elimination of competition or the creation of a monopoly. * * * The fact that a refusal to deal with a particular buyer without more, may have an adverse effect upon the buyer's business does not make the refusal to deal a violation of the Sherman Act. Damage alone does not constitute liability under the Act.
>
> "The present case does not involve price fixing. Nor does it involve an attempt to create a monopoly. The Stroh Brewery Company had one distributor in the territory under consideration before it terminated the plaintiff's franchise. It continued to have only one distributor thereafter. There is no allegation or contention that the beer of other breweries was not just as available in that area after the change in distributors as it was before. * * *
>
> "Unless it can be said that the refusal to deal with plaintiff had the result of suppressing competition and thus

constituted 'restraint of trade' within the meaning of Section 1 of the Sherman Act, there is no violation of the Act. We do not think that the substitution by Stroh Brewery Company of one distributor for another had this result." 318 F.2d 283, 286–287.

There is no contention by the plaintiffs herein that the defendant and Famous Brands conspired to drive the plaintiff out of business altogether. Also there is no contention made herein by the plaintiff that the arrangement with Gibson Wines and Famous Brands constituted price fixing or an attempt to fix prices. The contention seems to be that the defendant and Famous Brands conspired to create a monopoly for themselves and to eliminate competition altogether. The *Schwinn* case clearly stands for the proposition that the mere limitation of distributorships to one in a market area is not of itself an attempt to create a monopoly or an attempt to eliminate competition. *See also*, United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944).

The plaintiff attempts to attach significance to the fact that the Gibson Wines products have achieved a market dominance in a certain portion of western South Dakota. From this the plaintiff attempts to infer that the defendants were attempting to monopolize the business and that competition would be eliminated thereby by the loss of the franchise by Western Wholesale. The plaintiff also attempts to discount the availability of similar products in the area by the fact that Gibson's products are so clearly dominant. The fact that one product may or may not dominate the market does not eliminate the fact that the other brands of products discussed herein are equally as available and are in competition with the defendant's products.

It was established that Western Wholesale sold other dessert wines such as Gallo, Guild, Franzia and Roma. The case of United States v. E. I. DuPont DeNemours & Co., 351 U.S. 377, 76 S.Ct.

994, 100 L.Ed. 1264 (1956) stands for the proposition that where there are market alternatives which buyers may readily obtain, no monopoly exists. The Court must examine the "cross-elasticity" of demand. In other words, are one set of products interchangeable? Clearly this is relevant in a case such as this also. While Gibson Wine may be the dominant wine in the "reservation" areas of South Dakota, that does not raise it to monopoly status. Other wines clearly are substantial competition with Gibson in other areas. In the *DuPont* case no monopoly was found even though DuPont produced 75% of the cellophane in the country. The Court found it highly relevant that cellophane accounted for only 17.9% of the flexible wrapping materials sold. Clearly then, Gibson's product domination of one segment of the South Dakota market does not raise it to monopoly power status.

The mere fact that the defendant's products are more popular than its competitors does not thereby mean that the defendant's products have no competitors.

### ANTICOMPETITIVE MOTIVE

This Court should examine the motives behind the transfer of the franchise from Western Wholesale to Famous Brands. The United States Supreme Court made clear in the *Schwinn* case that a good business judgment alone would not protect actions by a company from the antitrust law. The case of Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke and Liquors Limited, 416 F.2d 71 (9th Cir. 1969), is instructive in this matter. The *Seagrams* case again concerns the termination by a liquor manufacturer of one of its distributors and a substitution of another distributor in its place. The Court clearly considered the business reasons of an improved distribution system of its products as a proper motive to be concerned with in an antitrust case. The Court ruled that a manufacturer could transfer its business from one distributor to another without violating the group boycott *per se* rule of the Sherman Antitrust Act as long as it was not done in response to some forbidden anticompetitive or monopolistic objective. There is substantial evidence in the record herein that the motive behind the transfer of the Gibson Wine franchise from Western Wholesale Liquors to Famous Brands was to obtain statewide distribution of its wine products. The plaintiff makes some contention that the motive behind the determination of its franchise was the fact that Western Wholesale handled mostly dessert wine items from the Gibson line. It is the plaintiff's contention that the defendants were attempting to force the plaintiff to take other items from the Gibson line if they were to take any at all, and thereby to force the plaintiffs into a tying contract. *See*, Siegel v. Chicken Delight, 448 F.2d 43 (9th Cir. 1971); Kansas City Star Company v. United States, 240 F.2d 643 (8th Cir. 1957). This Court does not feel that the plaintiff has established that anticompetitive motive. The record is clear that from the very outset of Gibson Wine's penetration of the South Dakota market that the company had the intention of marketing its products on a statewide basis should a distributor be found for that purpose. It is not a *per se* violation of the antitrust laws for a manufacturer to give its distributor an exclusive franchise, even if it means cutting off another distributor. *See*, United States v. Bausch & Lomb Optical Co., *supra*; Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors Limited, *supra*. However, the Gibson Wine Company could not have put Famous Brands upon a territorial restriction upon the resale of its products limiting it only to eastern South Dakota. Such a restriction would have worked a violation of the Sherman Act. *See*, United States v. Arnold, Schwinn & Company, 388 U.S. 365, 379, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The manufacturers are entitled to space and pattern their distributors in a logical pattern so as to promote competition by providing their franchise holder with

an adequate market in which to compete with not only among themselves but other products. *See generally,* United States v. General Motors Corp., 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). This Court finds that the motive behind the defendant's conduct of terminating Western Wholesale and franchising Famous Brands was to provide an expanded market area for its products and not to monopolize the market or limit competition in any manner whatsoever.

## CONCLUSION

The liquor industry has had occasion to have many "refusal to deal" cases tried. *See,* Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969); Scanlon v. Anheuser-Busch, Inc., 388 F.2d 918 (9th Cir. 1968); Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir. 1963); Ricchetti v. Meister Brau, Inc., 431 F.2d 1211 (9th Cir. 1970). There is no question but that a company can establish exclusive franchises in a market area. Furthermore, a manufacturer can terminate one exclusive franchise and establish another without engaging in an illegal boycott. This Court finds no other motive present in this transaction other than to gain a statewide distribution system. The motive was not to eliminate competition. On the contrary, it was to increase the same by entering the whole South Dakota market. This Court finds no substance in the tying contract hypothesis of the plaintiff.

Furthermore, this Court can ascertain no injury to competition in either South Dakota as a whole, or even the reservation area. In western South Dakota there will be little change in the market structure. One distributor will have been exchanged for another. In eastern South Dakota competition will be enhanced by adding a new line into the wine market. The plaintiff still has franchises on substantially similar products which it may now market with re-newed vigor in western South Dakota. No anticompetitive effects can be demonstrated.

It appears then that the defendant's actions were within the realm of sound business judgment and have not caused such effects on the market structure and competition as to cause this Court to interfere.

This opinion shall constitute this Court's findings of fact and conclusions of law in the matters herein. The defendant shall forthwith prepare the necessary papers to effectuate this opinion.