**William F. SCANLAN, Appellant,**

**v.**

**ANHEUSER–BUSCH, INC., a corporation et al., Appellees.**

**No. 21252.**

United States Court of Appeals
Ninth Circuit.

Jan. 11, 1968.

Rehearing Denied March 5, 1968.

J. Albert Hutchinson (argued), San Francisco, Cal., for appellant.

Charles E. Hanger (argued), of Brobeck, Phleger & Harrison, San Francisco, Cal., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

Appellant has brought suit against appellee alleging breach of a contract of distributorship, unfair competition and violation of state and federal antitrust laws. He appeals from a judgment of dismissal by the District Court following directed verdict. The question before us is whether, upon any of his claims, an issue remains for the jury. Finding no such issue, we affirm.

Appellee is a brewery with nationwide distribution of its products: Budweiser and Michelob premium beers and Busch Bavarian, a popular-priced beer. Appellant is a beer distributor located in Stockton, California. Prior to 1961 appellee's premium beers were distributed throughout San Joaquin County, California, by Fred Barosso, while appellant was distributor of the popular-priced Hamm's beer. In 1961 Barosso suggested to appellant that the two distributorships be combined. Appellant was not interested in this proposal but did agree to an arrangement whereby he purchased certain of Barosso's assets for $10,000, employed Barosso and took over his distributorship of Budweiser and Michelob.

Prior to 1963 appellee had not entered the highly competitive Pacific Coast market in popular-priced beer. In that year it determined to enter the market with Busch Bavarian. Appellant was offered the San Joaquin County distributorship but declined, feeling that his position as dealer for Hamm's, a competing beer, might thereby be prejudiced. Appellee then sought to find a San Joaquin County dealer for Busch Bavarian, but without success. Apparently the generally accepted view in the industry was that no beer wholesaler in the Stockton

area could operate profitably handling Busch Bavarian alone.

Appellee finally found, in Dinubilo & Sons, a liquor dealer interested in a beer distributorship, provided it could handle the whole Anheuser-Busch line of beers. Appellee thereupon terminated appellant's dealership in Budweiser and Michelob and entered into a dealership arrangement with Dinubilo & Sons. Barosso left appellant's employ and took employment with Dinubilo & Sons.

■ Appellant's first contention is that appellee's action in terminating his dealership of Budweiser and Michelob was a breach of an oral contract that his dealership was terminable only for cause. There was no evidence of such a contract. The evidence, on the contrary, was clearly to the effect that appellee would deal with appellant only on the basis of a buyer-seller relationship, order-to-order, terminable at the will of either party. Three letters were introduced in which appellant specifically acknowledged, prior to his assumption of the Budweiser-Michelob distributorship, that this would be the relationship between the parties. No issue remained for the jury respecting this contention. See Anheuser-Busch, Inc. v. Jefferson Distributing Co., 353 F.2d 956 (5th Cir. 1965); Roehm Distributing Co. v. Burgermeister Brewing Co., 196 Cal.App.2d 678, 16 Cal.Rptr. 881 (1961).

■ Appellant next contends that appellee engaged in unfair competition in soliciting Barosso away from him and utilizing his knowledge of appellant's customers.

Appellee's first contact with Barosso was initiated by Barosso himself. He had been serving the territory for distributors of Anheuser-Busch products for over 20 years. He had not sold his business or goodwill to appellant (only certain business assets), and had not made any covenant not to compete. He induced no other employees to leave appellant's firm. The identity and requirements of San Joaquin County beer retailers was certainly not confidential information but was available to anyone. See American Loan Corp. v. California Commercial Corp., 211 Cal.App.2d 515, 27 Cal.Rptr. 243 (1963). There simply are no facts upon which to base a claim of unfair competition in this respect.

■ Since this claim fails, it provides no basis for appellant's claim that there was a conspiracy between the brewer, Barosso, and Dinubilo & Sons to drive appellant out of business that violated § 1 of the Sherman Act. Nor would such a conspiracy to substitute one distributor for another, even if proven, violate the antitrust laws. See Perryton Wholesale, Inc. v. Pioneer Distributing Co., 353 F.2d 618, 622 (10th Cir. 1965), cert. denied, 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966).

■ Finally, appellant contends that in two other respects the termination of his Budweiser-Michelob dealership violated antitrust laws. First he contends that his dealership was terminated because of his refusal to cease handling Hamm's and that this action was taken pursuant to a conspiracy between appellee and certain of its Pacific Coast distributors, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, to eliminate wholesale outlets for competing popular-priced beers and leave a clear field for Busch Bavarian. He relies upon Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9th Cir. 1963).

The District Court determined that there was no evidence that appellee sought to have appellant abandon his dealership of Hamm's, but that the evidence was quite to the contrary. We agree. From appellant's own testimony it appears that appellee had stated that appellant would not be expected to give up distribution of Hamm's; that the expressed attitude of Hamm's was that it would neither approve nor disapprove appellant's handling of Busch Bavarian and that the decision would have to be appellant's; that appellant ultimately decided to take no chance on losing Hamm's and that to take on Busch Bavarian

would constitute an undue risk to his Hamm's distributorship.

Thus, appellant's loss of Budweiser and Michelob was not due to any *Walker*-type conspiracy to boycott competing beers. This case rather is comparable to Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir.), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed. 2d 166 (1963), which makes it clear that a mere unilateral change of distributors by a brewer, having no effect on the availability of competing products, does not violate the Sherman Act. Cf. United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

 Second, appellant contends that appellee violated § 1 of the Sherman Act and § 3 of the Clayton Act, 15 U.S.C. § 14, by refusing to make Budweiser and Michelob available to wholesale outlets unless the latter also distributed Busch Bavarian; that it was unlawfully using the economic power it possessed through control of its premium beers to free its popular-priced beer from the normal competitive stress of the open market.

There is a complete absence of evidence to establish a general conspiracy to create a "tying" arrangement between appellee and its distributors.

But, further, it is abundantly clear that appellee was not attempting to secure a competitive advantage through tying Busch Bavarian to Budweiser and Michelob in the instant case. It was only through transferring all three brands to another distributor that Busch Bavarian could enter the competitive arena at all in San Joaquin County. As stated in Brown v. Western Massachusetts Theaters, Inc., 288 F.2d 302, 305 (1st Cir. 1961), "the antitrust laws do not require a business to cut its own throat." We may add that they do not require a business to refrain from entering a competitive market. A course of conduct which thus increases rather than diminishes competition, benefitting rather than injuring the public, is not condemned under the Sherman or Clayton Acts.

Affirmed.