Hamilton C. **BUSHIE** and Doris Ann Bushie, Appellants,

v.

**STENOCORD CORPORATION** et al., Appellees.

No. 25536.

United States Court of Appeals, Ninth Circuit.

March 15, 1972.

Donald D. Meyers (argued), Phoenix, Ariz., for appellants.

James Powers (argued), William E. Marsh, of Powers, Boutell & Fannin, Phoenix, Ariz., for appellees.

Before HAMLEY, KOELSCH and GOODWIN,* Circuit Judges.

KOELSCH, Circuit Judge:

Hamilton and Doris Bushie (Bushie) were engaged in selling at retail and servicing Stenocord office dictating machines in the Phoenix, Arizona area, under a distributorship contract with defendant Stenocord Corporation. Stenocord decided, however, to sell and service its machines in the area through its own outlet exclusively and, on January 6, 1965, gave Bushie notice that his distributorship contract was cancelled, effective the end of that month. In the meantime, Stenocord had engaged Tommy Sconce and Vern Irby to operate its new Branch Office. Sconce, who was to be the new manager, had previously been an independent dealer of Norelco dictating machines in the Phoenix area; Irby had worked for Sconce as his service technician.

Bushie then brought this suit to recover damages for the loss of his Stenocord business.[1] In his complaint, he asserted two claims for violation of the Sherman Act [15 U.S.C. §§ 1, 2] a claim for a violation of the Robinson-Patman Act and a claim for breach of the distributorship contract.

The District Court granted defendant's motion for summary judgment on both of the Sherman Act claims and dismissed them. Bushie has appealed.[2]

The principal question that arises on a motion for summary judg-

---

* At the time this case was submitted, the Honorable Alfred T. Goodwin was a United States District Judge, for the District of Oregon, sitting by designation.

1. Bushie argued that the sales and servicing aspects of his business should be considered separate enterprises for the purposes of analysis under the Sherman Act. We have concluded that, even if they are so regarded, the same principles apply to each and that the conclusions we reach are common to both aspects.

2. The motion for summary judgment dealt only with the Sherman Act claims. So far as we can ascertain the Robinson-Patman and contract claims remain pending in the District Court, but the judgment is nevertheless final because the district court entered a Rule 54(b) determination and direction as a part of the judgment.

ment is whether factual issues of legal significance—"material facts"—remain to be resolved at trial. Rule 56(c), F.R. Civ.P., provides that summary judgment shall be granted where the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is not enough for the party opposing the motion for summary judgment merely to point to disputes of fact. As this court observed in McGuire v. Columbia Broadcasting System, Inc., 399 F.2d 902, 905 (9th Cir. 1968), "The showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law."

For the reasons set forth below, Bushie could not prevail under his asserted version of the facts and, therefore, we affirm.

**(1) The Section One Claim—Restraint of Trade**

Section One of the Sherman Act, 15 U.S.C. § 1, makes unlawful combinations, contracts, and conspiracies in restraint of trade. Bushie predicates his claim both on a conspiracy theory and on the theory, recognized by the Supreme Court in such cases as United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960) and Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), that a refusal of a manufacturer to deal with a distributor can constitute a "combination" in restraint of trade within the purview of this section.

First, he argues that Stenocord's termination of his dealership eliminated him from competition and hence restrained trade in the market for Stenocord products. This conclusion is erroneous. It is well settled that a manufacturer may discontinue dealing with a particular distributor "for business reasons which are sufficient to the manufacturer, and adverse effect on the business of the distributor is immaterial in the absence of any arrangement restraining trade." Ricchetti v. Meister Brau, Inc., 431 F.2d 1211, 1214 (9th Cir. 1970), cert. denied, 401 U.S. 939, 91 S. Ct. 934, 28 L.Ed.2d 219; Jos. E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S. Ct. 752, 24 L.Ed.2d 755, reh. denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415; Scanlan v. Anheuser-Busch, Inc., 388 F.2d 918 (9th Cir. 1968), cert. denied, 391 U.S. 916, 88 S.Ct. 1810, 20 L. Ed.2d 654.

In connection with refusals to deal, the courts have found to be "arrangements restraining trade" such practices as refusals to deal to eliminate price-cutting dealers, United States v. Parke, Davis & Co., supra, Klor's v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1958); to keep new competition out of a market, Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed. 2d 358 (1961); to enforce a tying arrangement, Lessig v. Tidewater Oil Co., 327 F.2d 459 (9th Cir. 1964); to create a monopoly in a product market, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), or to further strengthen an already dominant market position, Eastman Kodak v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

However, Bushie has failed to show anything from which it might be inferred that Stenocord's actions restrained trade or were motivated by an anticompetitive intent. In Poller v. Columbia Broadcasting System, Inc., supra, a case on which Bushie heavily relies, there was a clear showing in the record of such restraint.

Nor does the fact that Bushie presented evidence that he had been a good dealer for Stenocord tend to show that Stenocord cancelled his dealership with an intent to restrain trade. "[T]he most [Bushie's] evidence suggests is that [Stenocord] may have been

mistaken in judging the quality of plaintiff's performance." Jos. E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., *supra,* 416 F.2d at 78. It does not mean that a finder of fact could draw from it the further inference that some "sinister anticompetitive intent" existed. *Id.* As the Supreme Court made clear in First National Bank v. Cities Service, Inc., 391 U.S. 253, 88 S.Ct. 1575, 20 L. Ed.2d 569 (1968) allegations of restraint of trade must be supported by "significant probative evidence" to overcome a motion for summary judgment.

Bushie's further argument is that the agreement between Stenocord and Sconce constituted a conspiracy in restraint of trade. In substance, the argument is that the purpose of the agreement was to eliminate competition in the dictating machine market. We recognize, of course, that where such a purpose appears, an agreement constitutes actionable conspiracy. However, Bushie has failed to produce any proof to support his conspiracy allegation.

True, the effect of the agreement was to eliminate Bushie as a Stenocord dealer. But this alone would not support a conclusion that Stenocord's motive was anticompetitive. A manufacturer is free to agree with a third party to give him an exclusive distributorship "even if this means cutting off another distributor," Jos. E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., *supra,* 416 F.2d at 76, so long as in doing so there would be no resulting restraint of trade. Ricchetti v. Meister Brau, Inc., *supra.* To hold otherwise would be to "saddle [defendant] with [plaintiff's] services forever." Cartrade, Inc. v. Ford Dealers Advertising Ass'n, 446 F.2d 289, 294 (9th Cir. 1971). Bushie's proof shows, and Stenocord admits, an agreement; but it does not show that the agreement was for any purpose prohibited by Section One.

The facts that Sconce left Norelco's employ in order to work for Stenocord, and that Norelco had no sales outlet in Phoenix for some months thereaf-

ter, lack probative significance, for neither fact supports an inference that Stenocord intended to eliminate Norelco as a competitor or that by their agreement Stenocord and Sconce could prevent Norelco from continuing to make its products available in the market.

(2) *The Section Two Claim—Monopolization.*

Bushie alleges that Stenocord violated Section Two, both by actually acquiring a monopoly and by attempting to do so. He argues, in substance, that the exclusive control which Stenocord has over the sale and servicing of Stenocord products, as a result of the termination of his dealership, constitutes a monopoly proscribed by Section Two. However, the law is to the contrary.

A manufacturer has a "natural monopoly over his own products, especially when the products are sold under trademark. . . ." Industrial Building Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1344 (9th Cir. 1970). See United States v. E. I. Du-Pont de Nemours & Co.. 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Unless the manufacturer used his natural monopoly to gain control of the relevant market in which his products compete, the antitrust laws are not violated. The cases relied upon by Bushie to support his monopolization claim all involved a degree of total market dominance—as distinguished from "brand" monopoly over the manufacturer's own product—not shown here. See, e. g., United States v. Klearflax Linen Looms, Inc., 63 F.Supp. 32 (D.Minn.1945); United States v. United Shoe Machinery Corp., 110 F.Supp. 295 (D.Mass.1953), aff'd 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954); Eastman Kodak v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

Bushie urges several alternate theories to support his claim of attempted monopolization. First, he points out that evidence tending to establish a claim or restraint of trade under Section One also tends to establish an attempt to

monopolize under Section Two. We do not dispute the validity of that proposition, see Industrial Building Materials, Inc. v. Interchemical Corp., *supra*, 437 F.2d at 1344, but we note that earlier in this opinion we held that Bushie's Section One claim was not supported by sufficient evidence to defeat a motion for summary judgment. It therefore cannot be used as the sole basis for a Section Two attempt to monopolize claim.

 Bushie further contends that intent is the sole essential element of a claim of attempted monopolization, and that no showing of Stenocord's power to monopolize the market is required, citing our decisions in Lessig v. Tidewater Oil Co., 327 F.2d 459, 474 (9th Cir. 1964) and Industrial Building Materials, Inc. v. Interchemical Corp., *supra*, 437 F.2d at 1344. In both of those cases, the attempted monopolization claim was founded upon a substantial claim of restraint of trade, from which we indicated the specific intent required for a claim of attempt to monopolize could be inferred. No such foundation is present here.

Finally, Bushie asserts that Stenocord products comprise the relevant market, and that therefore the company's acquisition of exclusive control over the sale and servicing of its products in the Phoenix area market was in furtherance of an attempt to monopolize commerce within the meaning of Section Two. A single manufacturer's products might be found to comprise, by themselves, a relevant market for the purposes of a monopolization claim, if they are so unique or so dominant in the market in which they compete that any action by the manufacturer to increase his control over his product virtually assures that competition in the market will be destroyed. Cf. United States v. United Shoe Machinery Corp., *supra*, 110 F.Supp. at 341–344; Industrial Building Materials, Inc. v. Interchemical Corp., *supra*, 437 F.2d at 1344. There is no suggestion in this case, however, that Stenocord dominated the market for of-

fice dictating machines generally, or that it controlled a major share of the market for machines of its particular type. To the extent that Bushie's argument suggests that the "relevant market" to be used in considering Stenocord's market share is to be arrived at by disregarding those other sellers of dictating equipment whose products are similar, both in design and function, because Bushie did not "consider" them competitors, we reject it. It is only by excluding such competition from the determination of the relevant market that Bushie hopes to show a market in which Stenocord would be the dominant figure. Since none of his proof would establish a "dangerous probability" of monopolization [American Tobacco Co. v. United States, 328 U.S. 781, 785, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)] in a properly defined market, summary judgment was proper.

The judgment is affirmed.