**Richard BOUGEOIS**

v.

**A. B. DICK COMPANY et al.,**
**Third-Party-Defendants.**

**Civ. A. No. 18531.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Feb. 25, 1974.

Philip J. Shaheen, Jr., Lake Charles, La., for plaintiff.

Stockwell, St. Dizier, Sievert & Viccellio, Baggett, Hawsey, McClain & Morgan, Lake Charles, La., for defendants.

EDWIN F. HUNTER, Jr., Chief Judge:

Plaintiff, Richard Bougeois, entered into a written franchise agreement with defendant A. B. Dick Company on September 8, 1970. The agreement provided for the sale of certain A. B. Dick products to Bougeois for resale to the public. As dealer, Bougeois was given an "assigned dealer territory" consisting of the Louisiana parishes of Calcasieu, Cameron and Jefferson Davis. On April 24, 1972, plaintiff was notified that his dealership would be terminated in 90 days.

Bougeois brought this action for treble damages in the amount of $9,929,696.13, together with attorney's fees and costs for the "wrongful and unlawful termination of plaintiff's dealer franchise." His complaint contains these basic allegations:

(1) Because plaintiff sold, rented and serviced other brand name copy and duplicating products, "certain agents and/or employees of defendant advised plaintiff that he was to cease such business."

(2) Because plaintiff sold outside of his territory specified in the franchise agreement, "certain agents and/or employees of defendant intervened to terminate said sale, whereupon plaintiff was then instructed that he was prohibited by defendant from dealing in any area outside /the/ territory specified in * * * said contract."

(3) By terminating the dealership agreement and by entering into an agreement with another person for the dealer franchise * * *, "defendant thereby engaged in a wrongful and unlawful combination and conspiracy;

"A. To prevent and restrict sale and Distribution of defendant's products, by reason of this refusal, for the unlawful reasons stated by plaintiff in the aforesaid.

"B. To prevent and restrict the sale and distribution of products manufactured and sold by defendant's competitors.

"C. To prevent plaintiff from engaging in the sale, rental, and service of copy products as a business separate and apart from the A. B. DICK COMPANY franchise.

"D. To compel (sic) plaintiff to purchase chemicals, equipment and materials exclusively from defendant."

Defendant has filed a motion for summary judgment upon these claims.

■ Nowhere in the pleadings, affidavits, depositions, or answers does plaintiff specify what section of the Anti-Trust Act has been violated. He alleges:

"defendants are subject to and bound by the provisions of the Sherman Anti-Trust Act, being Sections 1 through 33, inclusive, Title 15, U.S.C. A."

and that defendant's alleged actions were for "reasons forbidden by the anti-trust laws; and "in restraint of trade and commerce." The complaint, together with plaintiff's affidavits and depositions indicate that plaintiff must be relying on 15 U.S.C.A. § 15,[1] and 15 U. S.C.A. § 1, which provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *."

As to any other section of the statute, 15 U.S.C.A. §§ 2–33, the record is bereft of anything even indicating or suggesting a violation. Consequently, with re-

spect to any claims under §§ 2–33, defendant's motion for summary judgment must be granted. It is. Beckman v. Walter Kidde & Co., 316 F.Supp. 1321 (E.D.N.Y.1970), aff'd 451 F.2d 593 (2nd Cir. 1971), cert. denied, 408 U.S. 922, 92 S.Ct. 2488, 33 L.Ed.2d 333 (1973); McElhenney Co. v. Western Auto Supply Co., 269 F.2d 332, 339 (4th Cir. 1959); Periodical Distributors, Inc. v. American News Co., Inc., 416 F.2d 1330 (2nd Cir. 1969).

The issue quickly narrows. On this record is there a material factual dispute as to a possible violation of § 1 of the Sherman Act? This section proscribes any contract, combination, or conspiracy in restraint of trade. Plaintiff must establish: (1) that there was a contract, combination, or conspiracy, and (2) that such contract, combination, or conspiracy was in [undue] restraint of trade. House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2nd Cir. 1902). Then, assuming Bougeois' version of the facts to be true, is there a viable legal theory which would entitle him to judgment?

■ Plaintiff alleges an unlawful "combination and conspiracy."[2] The complaint and supporting affidavits do not tell us the identity of the conspirator. Plaintiff only claims that defendant entered into an "agreement" with another person for the franchise (in Paragraph 8), and thereby engaged in the unlawful combination and conspiracy (in Paragraph 9). In his deposition, Bougeois stated that he did not know with whom A. B. Dick conspired or combined. The agreement for the new franchise was entered into *after* termination of the Bougeois franchise (plaintiff's complaint, Paragraph 8). The allegations of conspiracy are merely concluso-

---

1. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. The contract between plaintiff and defendant is before us. There are no disputed facts as to the contract; its terms and conditions, admittedly, are not in violation of any law.

ry. The mere hope that evidence may turn up to support a conspiracy does not suffice to warrant a trial. Plaintiff can come within the meaning of § 1 of the Act only by claiming the existence of a conspiracy, but no conspiracy with *anyone* could possibly exist under the facts disclosed. Nelson Radio and Supply Co. v. Motorola, 200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S. Ct. 783, 97 L.Ed. 1356 (1953). Bougeois has patently failed to produce any particulars or facts which would suggest or permit the inference of a combination or conspiracy between A. B. Dick and another separate distinct entity. This case must end then and there.

Plaintiff argues that A. B. Dick, through its officers and/or agents, wrongfully cancelled his franchise because he was selling competitive products and because he was selling A. B. Dick products outside the assigned territory. Refusal of a manufacturer to deal with a distributor can constitute a "combination" in restraint of trade under § 1 of the Act. United States v. Parke, Davis and Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). Plaintiff contends that the termination was for anti-competitive *reasons* and therefore was in restraint of trade. However, a manufacturer may *discontinue dealing with a particular distributor* "for business reasons which are sufficient to the manufacturer, and adverse effect on the business of the distributor is immaterial in the absence of any arrangement restraining trade." Bushie v. Stenocord Corp., 460 F.2d 116, 119 (9th Cir. 1972); Ricchetti v. Meister Brau, Inc., 431 F.2d 1211, 1214 (9th Cir. 1970), cert. denied, 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971); Jos. E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755, re-denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415 (1970); Scanlan v. Anheuser-Busch, Inc., 388 F. 2d 918 (9th Cir. 1968), cert. denied, 391

U.S. 916, 88 S.Ct. 1810, 20 L.Ed.2d 654 (1968). In *Bushie* the Ninth Circuit summarized how the courts have dealt with refusals to deal which have been "arrangements restraining trade:"

> "In connection with refusals to deal, the courts have found to be 'arrangements restraining trade' such practices as refusals to deal to eliminate price-cutting dealers, United States v. Parke, Davis & Co., supra, Klor's v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1958); to keep new competition out of a market, Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); to enforce a *tying arrangement*, Lessig v. Tidewater Oil Co., 327 F.2d 459 (9th Cir. 1964); to create a monopoly in a product market, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L. Ed.2d 458 (1962), or to further strengthen an already dominant market position, Eastman Kodak v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

In each of these cases, however, an anticompetitive intent existed. This rule was enunciated by the Supreme Court in United States v. Colgate, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919):

> "In the absence of any purpose to create or maintain a monopoly the act does not restrict the long recognized right of trader or manufacturer engaged in an extirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell."

A manufacturer is free to agree with a third party to give him an exclusive dealership, "even if this means cutting off another distributor," (Jos. E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd. *supra*, 416 F.2d at 76) so long as in doing so there would be no resulting restraint of trade. Plaintiff's assertion that A. B. Dick cancelled him

because he was selling competitive products and/or because he was selling A. B. Dick products outside the assigned territory is not supported by facts of a substantial nature. Plaintiff has submitted depositions and affidavits to the effect that officers and/or agents of A. B. Dick threatened him with cancellation if he did not discontinue these practices. These supporting affidavits and depositions include those of Mr. and Mrs. Bougeois, obviously interested parties. However, numerous affidavits for the defendant state, that no one from A. B. Dick ever threatened Bougeois [3] with termination because he was selling competitive products or selling outside his territory. On the contrary, the reason for the cancellation of the franchise was Bougeois' poor handling of finances and poor management procedures. The affidavits and depositions submitted, as well as numerous inter-office memos of A. B. Dick, clearly establish a basis in fact for the termination of the franchise. They reveal:

(a) The receipt by defendant of NSF checks from plaintiff was a fairly common occurrence;

(b) plaintiff frequently failed to notify defendant's Beaumont Branch of rental cancellations and the sale of rental machines;

(c) plaintiff accepted and deposited to his account customer checks that were intended for defendant;

(d) plaintiff's habit of keeping erroneous records on machine rentals;

(e) undercapitalization of plaintiff;

(f) very poor management procedures which were employed by plaintiff; and

(g) plaintiff breached the dealer contract numerous times by, among other reasons, failing to fulfill the payment terms of the agreement.

See, e. g., the audit report of February 21, 1972.

The statement of Hayward Simoneaux and the affidavit of Raymond Hawa are to the effect that A. B. Dick Company would not sell the collator to Richard Bougeois because the cost of the machine exceeded his credit limit. Both the Beaumont Branch and the New Orleans Branch offered to sell the collator to Richard Bougeois so that he could sell it to the Lakewood Hospital if he would pay cash for it. This Richard Bougeois never offered to do, even though, as set forth in the deposition of Richard Bougeois, he cashed the $5,000.00 check of the Lakewood Hospital by depositing it to his own account, and as we read the record, he never refunded this amount to the Lakewood Hospital.

We fully recognize that a court should be extremely hesitant before it grants antitrust defendant's summary judgment motions and thereby deprives an antitrust plaintiff of a trial. Poller v. Columbia Broadcasting System, 368 U.S. 474, 82 S.Ct. 486 (1962); Radiant Burners, Inc. v. People's Gas Light and Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). However, we are persuaded that plaintiff has failed to establish the necessary material issues needed for a triable § 1 litigation. First, he has failed to show that there was an invalid contract. Second, there is not the slightest proof of combination or conspiracy. Third, even if he could show such a contract, combination, or conspiracy, he has failed to show that the resultant restraint of trade (stifling his selling of competitive products and selling outside his territory) imposed would have been *unreasonable*. It is only in the case of a combination which is *per se* unlawful where proof that the combination exists is all that is required to make out a cause of action. Included among these illegal combinations are horizontal price fixing (United States v. Socony-Vacuum Oil

3. Affidavits of George Ellis, Hayward Simineaux, Jude Arnoult, Joe Bourgeois, Mrs. Nellie Bertrand, Arnold Bell.

Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1950); a division of markets (United States v. Arnold, Schwinn & Co., 388 U.S. 365, 378, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); and resale price maintenance (Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911)). Plaintiff does not claim that the alleged conspiracy or combination in this case comes within any one of these categories; nor has plaintiff attempted to prove that the alleged restraint of trade was an unreasonable one.

This litigation should end. Ample opportunity has been afforded to develop a material factual issue. There is no evidence of an invalid contract. There is no co-conspirator. Valid reasons existed for the franchise termination. Surely, there has been no unreasonable restraint of trade.

Defendants are entitled to summary judgment.

So ordered.