**HELIX MILLING COMPANY,**
**Plaintiff-Appellant,**

v.

**TERMINAL FLOUR MILLS CO. and General Foods Corporation,**
**Defendants-Appellees.**

No. 73–1831.

United States Court of Appeals,
Ninth Circuit.

Sept. 18, 1975.
Certiorari Denied Jan. 12, 1976.
See 96 S.Ct. 782.

Richard J. Lucas (argued) of Orrick, Herrington, Rawley & Sutcliffe, San Francisco, Cal., for plaintiff-appellant.

R. R. Bullivant (argued) of Bullivant, Wright, Johnson, Pendergrass & Hoffman, Portland, Or., for defendants-appellees.

## OPINION

Before BROWNING and WRIGHT, Circuit Judges, and LINDBERG,* District Judge.

WRIGHT, Circuit Judge:

Plaintiff Helix Milling Company (Helix) appeals the decision of the district

---

* Senior District Judge, Western District of Washington.

court granting summary judgment and dismissing its claim for damages under § 1 of the Sherman Act [15 U.S.C. § 1] and § 7 of the Clayton Act [15 U.S.C. § 18]. We affirm the decision of the district court with respect to plaintiff's § 7 claim but reverse and remand with respect to its § 1 cause of action.

Helix operated a mill in Oregon for flour and millfeed which was destroyed by fire. Plaintiff alleged that the only feasible way to continue its milling and sales business was to acquire the assets of an existing mill in the Pacific Northwest. The cost of constructing a new mill was considered too great with respect to its limited profitability. Hence Helix approached defendant General Foods with an offer to purchase its Igleheart mill at Pendleton, Oregon (which General desired to sell because it was not meeting its profit objectives). About the same time, defendant Terminal Flour Mills initiated negotiations with General to purchase the Igleheart mill.[1]

General and Terminal ultimately reached an agreement. General signed a contract to sell the Igleheart mill and sent it to Terminal for signature. Helix then sued to enjoin the acquisition and for damages for violation of § 1 of the Sherman Act and § 7 of the Clayton Act as well as for pendent claims based on unfair competition and trade defamation.

General subsequently sought to revoke its acceptance of Terminal's offer to purchase. However, Terminal indicated its acceptance of the contract, without signing it, and cross-complained for specific performance. After three years of litigation, Terminal dropped its cross-complaint and moved for summary judgment on the grounds that there could be no § 7 violation without a completed acquisition and that the attempted acquisition could not have violated § 1. The district court granted both motions.

Under Rule 56(c), F.R.Civ.P., summary judgment should be granted where the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As this court noted in *Bushie v. Stenocord Corporation*, 460 F.2d 116, 119 (9th Cir. 1972):

> The showing of a "genuine issue for trial" is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law.

Quoting *McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968).

## I. SHERMAN ACT CLAIM.

The plaintiff alleged that there was a Pacific Northwest flour and millfeed market as well as a submarket for sales to the Defense Supply Agency for which it and Terminal's sister corporation were the major suppliers. It asserted that the only feasible means to re-enter the market was to purchase an existing mill to supply its sales organization. It argued that the purchase of the only available mill by Terminal would necessarily have excluded it from the market and prevented it from resuming its pre-fire competition with Terminal.

Helix further alleged that, but for the contract between Terminal and General, it would have purchased the Igleheart mill. Plaintiff argues that the acquisition of the mill by Terminal would have violated both § 1 of the Sherman Act and § 7 of the Clayton Act.

In essence then, Helix alleged that there was a contract, combination or conspiracy to enter into an illegal acquisition which necessarily would exclude Helix from the Pacific Northwest flour

1. Plaintiff offered to prove that at this time Terminal and General were two of the five remaining competitors for the Pacific Northwest flour and millfeed market, with Terminal holding 19.6% and General 10.3% of the mar-

ket. It also alleged that General held 8% and Terminal 64% of the submarket for sales to the Defense Supply Agency, a market in which Helix had provided 56% of the sales prior to the destruction of its mill.

and millfeed market and the regional submarket for DSA sales.

■ A major purpose of § 1 of the Sherman Act is to foster competition and to protect the ability of competitors to enter markets. In *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945), the Supreme Court held invalid an AP by-law which permitted members to impose significant, often prohibitive, penalties on potential competitors seeking to join the organization. The Court stated:

> Trade restraints of this character, aimed at the destruction of competition, tend to block the initiative which brings newcomers into a field of business and to frustrate the free enterprise system which it was the purpose of the Sherman Act to protect.

326 U.S. at 13–14, 65 S.Ct. at 1421.

In a variety of contexts the courts have struck down collaborative actions which prevented competitors from entering a given market, *Associated Press, supra; United States v. General Motors*, 384 U.S. 127, 145, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Radiant Burners, Inc. v. Peoples Gas Light and Coke Co.*, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); *United States v. Griffith*, 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); *International Salt Co. v. United States*, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *Cataphote Corp. v. DeSoto Chemical Coatings, Inc.*, 450 F.2d 769, 774 (9th Cir. 1971), *cert. denied* 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972); *cf. Gough v. Rossmoor Corp.*, 487 F.2d 373, 378 (9th Cir. 1973).

■ Here the plaintiff argues that the defendants combined and used a contract of sale to exclude it from the Pacific Northwest flour and millfeed market. In a closed market, where the acquisition of existing production facilities is the only economically feasible method of entry, an agreement to acquire the only available facilities necessarily excludes a potential entrant.

The issue before us then is whether the agreement and contract between Terminal and General in November of 1969 was a restraint of trade or was merely "joint activity having a primary purpose and direct effect of accomplishing a legitimate business objective [having] an incidental and indirect effect upon the business of some competitors." *United States v. Hilton Hotels Corp.*, 467 F.2d 1000, 1003 (9th Cir. 1972), *cert. denied sub nom. Western International Hotels Co. v. United States*, 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973); *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors Ltd.*, 416 F.2d 71 (9th Cir. 1969), *cert. denied* 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970).

■ It is no answer that plaintiff's suit aborted the acquisition with the result that Terminal never controlled the Igleheart mill and that the public retained the benefits of two competing mills. *See Poller, supra*, 368 U.S. at 473, 82 S.Ct. 486. The Sherman Act prohibits competitors from selecting who or what their competition will be, *Associated Press, supra*. This is particularly significant here where Helix alleges the existence of a submarket in which it was Terminal's major competitor and in which General played an insignificant role.

Defendants argue that our decision in *Hawaiian Oke* precludes a finding of a forbidden restraint of trade. *Hawaiian Oke* permitted the decision of a manufacturer to switch distributors for its product even though this meant excluding its former distributor from the market. This conclusion was conditioned, however, on the absence of "an adverse purpose or effect on competition." 416 F.2d at 78.

■ A jury could find such an unreasonable restraint of trade as a necessary consequence of the fact that Helix would have purchased the mill but for General's decision to sell it to Terminal, and that defendants' course of action would

necessarily exclude competition from the market because of the closed nature of the market.

In *Hawaiian Oke*, the principal defendant was not in competition with the plaintiff. In *Poller* and *Bushie*, the defendants cancelled vertical arrangements with the plaintiffs in order to assume that business themselves. In *Poller*, CBS allegedly cancelled its affiliation with a UHF station, purchased a competing UHF license, and then purchased the assets of its former affiliate at distress prices in order to operate a UHF outlet for its programs in that market. In *Bushie*, the defendant cancelled its regional distributorship and opened a branch office to conduct a distribution business itself.

In the former case, the Supreme Court concluded that

. . . if such a cancellation and purchase were part and parcel of unlawful conduct or agreement with others or were conceived in a purpose to unreasonably restrain trade, control a market, or monopolize, then such conduct might well run afoul of the Sherman Law.

368 U.S. at 468–469, 82 S.Ct. at 489.

In *Poller*, the Court found that there was sufficient evidence from which a jury might have concluded that CBS intended to restrain trade in the relevant UHF market by eliminating independent UHF and destroying its former affiliate's business, 368 U.S. at 470–473, 82 S.Ct. 486. The Court held that it had been improper to grant a summary judgment and remanded the case for trial. *Id.*

In *Bushie*, the court found that there was no evidence that the cancellation restrained trade or was motivated by anticompetitive intent, 460 F.2d at 119. All the plaintiff adduced there was the fact of cancellation and the subsequent initiation of a branch office to conduct the distributing business.

The plaintiff here has alleged that the defendants restrained trade by entering a contract for an acquisition which would have violated § 1 of the Sherman Act,[2] and the necessary effect of which would be to exclude plaintiff from the markets in question. As the Court noted in *United States v. Griffith*, 334 U.S. 100, 105, 68 S.Ct. 941, 944, 92 L.Ed. 1236 (1948):

It is . . . not always necessary to find a specific intent to restrain trade or to build a monopoly in order to find that the anti-trust laws have been violated. It is sufficient that a restraint of trade or monopoly results as the consequence of a defendant's conduct or business arrangements.

A jury could find here such anticompetitive intent from defendants' action in agreeing to a course of action which would necessarily exclude Helix from the market, *Associated Press, supra; General Motors, supra,* and whose successful attainment would result in an acquisition which could be found to involve a violation of § 1. The plaintiff has alleged the necessary market and the substantial shares of those markets held by General and Terminal. As the Court noted in *United States v. First National Bank and Trust Co. of Lexington*, 376 U.S. 665, 671–672, 84 S.Ct. 1033, 1037, 12 L.Ed.2d 1 (1964), speaking of the railroad merger cases:

. . . where merging companies are major competitive factors in a relevant market, the elimination of significant competition between them, by merger or consolidation, itself constitutes a violation of § 1 of the Sherman Act.

Given the plaintiff's allegation and offer of evidence, it was error to grant summary judgment.

 The district court also noted that, in order to find a combination in this case, it would have been necessary to prove an agreement between defendants that neither of their mills would be

2. *United States v. First National Bank and Trust Co. of Lexington,* 376 U.S. 665, 671, 84 S.Ct. 1033, 12 L.Ed.2d 1 (1964).

sold to Helix. This misstates the rule. Proof of participation in a course of conduct that has the necessary consequence of barring entry of competition into the market would provide the basis for a finding of a combination. *Albrecht v. Herald Co.,* 390 U.S. 145, 149–150, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Pearl Brewing Co. v. Anheuser-Busch Co.,* 339 F.Supp. 945, 950 (S.D.Texas, 1972). The collaboration of the person necessary to establish a combination need not even be willing, *Albrecht,* 390 U.S. at 150 n. 6, 88 S.Ct. 869.

Similarly, plaintiff introduced evidence that defendants entered into a contract[3] to complete the acquisition, signed by General, against whom enforcement was sought by Terminal for three years following the initial agreement. The plaintiff argues that this contract excluded it from the market and that Terminal's action in seeking specific performance extended the exclusionary impact beyond the period of the initial agreement. The effect on Helix is alleged to be the same as though the acquisition had been completed. It was excluded from the market in either event.

Hence there was evidence which, interpreted in the light most favorable to the plaintiff, would support a finding of a contract or combination to restrain trade. It was error to prevent the plaintiff from attempting to prove this claim. ■ Since such a finding of the exclusion of a competition by collaborative action having the necessary effect of restraining trade would violate the Sherman Act, no additional showing of "public injury" is necessary to support a private action for damages. *Radiant Burners, Inc. v. Peoples Gas Light and Coke Co., supra,* 364 U.S. at 660, 81 S.Ct. 365; *Lamb Enterprises, Inc. v. Toledo Blade*

*Co.,* 461 F.2d 506, 517–18 (6th Cir. 1972), *quoting Rogers v. Douglas Tobacco Board of Trade, Inc.,* 266 F.2d 636 (5th Cir. 1959); *Switzer Brothers, Inc. v. Locklin,* 297 F.2d 39, 47 (7th Cir. 1961). *See also Richfield Oil Corp. v. Karseal Corp.,* 271 F.2d 709, 727–28 (9th Cir. 1959).

Plaintiff, of course, must prove that it would have purchased the mill but for the contract between Terminal and General. This involves proof both that General would have made the sale and that Helix would have been able to purchase it and re-enter the milling and sales market, *see Martin v. Phillips Petroleum Co.,* 365 F.2d 629 (5th Cir.), *cert. den.* 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966), *reh. denied* 386 U.S. 930, 87 S.Ct. 851, 17 L.Ed.2d 804 (1967).

■ Our holding is a limited one, given the unusual factual context of this case. We are not unmindful of the fact that Helix has abandoned its allegation that defendants acted with the specific anticompetitive purpose of excluding it from the market. We hold that such a specific intent need not be proven in the particular circumstances of this case.

We are faced here with an allegedly closed market where acquisition is the only feasible means of entry. Plaintiff alleges that but for the actions of the defendants, including the aborted contract of sale, it would have purchased the only available productive facility and resumed competition within the market in question. In such a factual setting, where entry to the market by the plaintiff allegedly is prevented by a merger or acquisition which would violate § 1 of the Sherman Act and where the defendants were aware of the bid by the plaintiff, there is a Sherman Act § 1 cause of action.[4]

---

3. We have held that the term "contract" should be interpreted broadly, *Beverage Distributors, Inc. v. Olympia Brewing Co.,* 440 F.2d 21, 30 (9th Cir.), *cert. den.* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971).

4. We express no view as to whether the doctrine discussed in *Rex Chainbelt, Inc. v. Harco Products, Inc.,* 512 F.2d 993 (9th Cir. 1975),

decided after this case was submitted, may affect any claim to damages resulting from the assertion by Terminal of its counterclaim and General Foods' refusal to sell the mill to Helix while that counterclaim was pending. *See also Ansul Co. v. Uniroyal Inc.,* 448 F.2d 872, 882 (2d Cir. 1971); *Kobe v. Dempsey Pump Co.,* 198 F.2d 416, 424–25 (10th Cir. 1952).

## II. CLAYTON ACT CLAIM.

The district court granted summary judgment for the defendants on the Clayton Act § 7 claim, basing its decision on the fact that no acquisition had taken place. We affirm.

It has long been established that there is a private cause of action for damages under § 7, *Carlson Companies, Inc. v. Sperry and Hutchinson Co.*, 507 F.2d 959 (8th Cir. 1974); *Gottesman v. General Motors Corp.*, 414 F.2d 956 (2d Cir. 1969); *Dailey v. Quality School Plan, Inc.*, 380 F.2d 484 (5th Cir. 1967); *Bay Guardian Co. v. Chronicle Publishing Co.*, 340 F.Supp. 76 (N.D.Cal.1972); *Kirihara v. Bendix Corp.*, 306 F.Supp. 72 (D.Haw. 1969); *Isidor Weinstein Investment Co. v. Hearst Corp.*, 310 F.Supp. 390 (N.D. Cal., 1970); *Zenith Vinyl Fabrics Corp. v. Ford Motor Co.*, 357 F.Supp. 133, 136 (E.D.Mich.S.D.1973).

A claim has been permitted, however, only in cases in which an acquisition has been completed. In the only case in which damages were sought for an uncompleted merger, *GAF Corp. v. Circle Floor Co.*, 329 F.Supp. 823, 829 (S.D.N.Y. 1971), the court held that no cause could be allowed because the possibility of proving damages was too remote. The Second Circuit affirmed on the ground that no competitive injury had been alleged, 463 F.2d 752, 758–759 (2d Cir. 1972). In *Carlson*, the court implied that only a completed merger could provide a cause of action for damages.

■ The language of § 7 speaks in terms of a completed acquisition rather than an attempted merger.[5] We can find no compelling reason for extending the reach of § 7 to an uncompleted merger.

The decision of the district court is affirmed as to plaintiff's § 7 claim and reversed and remanded as to its § 1 claim.

---

5. 15 U.S.C. § 18 (1974):

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."