HENDERSON BROADCASTING
CORP., Plaintiff,

v.

HOUSTON SPORTS ASSOCIATION,
INC., and Lake Huron Broadcasting
Corp., Defendants.

Civ. A. No. H–81–558.

United States District Court,
S.D. Texas,
Houston Division.

April 10, 1987.

See also, 647 F.Supp. 292.

Charles J. Brink, Brink & Assoc., Houston, Tex., for plaintiff.

Marvin Schulman, Houston, Tex., for David A. Wenger, Jr., intervenor.

Ronald Scott, Mark Lowes, Bracewell & Patterson, Houston, Tex., for defendants; William Key Wilde, of counsel.

## MEMORANDUM ON SUMMARY JUDGMENT

HUGHES, District Judge.

Henderson Broadcasting Corporation has sued the Houston Sports Association and Lake Huron Broadcasting Corporation for several causes of action based on the termination of HSA's license to Henderson to broadcast Houston Astros games on

Henderson's radio station, KYST, to the benefit of Lake Huron's license to broadcast the games on its station, KENR. Henderson fails to establish its antitrust and contract claims.

*Background.*

Houston Sports Association owns the Houston Astros baseball team of the American League. In December 1980, HSA gave KYST a license to allow KYST the non-exclusive right to broadcast the Astros games for the 1981 season. KYST is a minor am radio station in Alvin, Texas, a town in Galveston County about 35 miles south-southwest of downtown Houston.

In January 1981, HSA and KENR agreed that KENR would be the primary station for the Astros 1981–83 seasons and that KENR would have the exclusive right to broadcast the Astros games in Houston. The three-year contract between HSA and KENR was signed May 12, 1981.

After the license was given to KYST, HSA learned that KYST's power was going to be increased to a level that would allow KYST broadcasts to cover the Houston-Galveston metropolitan area, which is the major market for Astros broadcasts. HSA cancelled KYST's license in February 1981, before the baseball season began.

KYST then brought this action alleging that:

(1) HSA and KENR had conspired to monopolize and had monopolized the broadcast of and advertising time during major league baseball games in the greater Houston metropolitian area;

(2) KENR had tortiously interfered with KYST's license from HSA to broadcast the Astros baseball games for the 1981 season; and

(3) HSA had breached its license with KYST.

KENR has been dismissed through settlement, leaving only the antitrust and breach of contract claims against HSA.

*Earlier Proceeding.*

This case was before the court earlier on a motion for partial summary judgment by Houston Sports Association. On that motion, the court granted summary judgment only against KYST's claims for a *per se* violation of the antitrust laws. *Henderson Broadcasting Corp. v. Houston Sports Ass'n,* 647 F.Supp. 292 (S.D.Tex.1986) (McDonald, J.).

The one unresolved issue after the partial summary judgment was the market shares HSA and KENR had in the relevant market and what power this may have given them to cause a reduction in competition. The parties agree that the geographic market is the Houston-Galveston area. The court defined the product market as "advertising spots created by radio broadcast formats that compete with the advertising spots created by the broadcast of the Astros baseball games." *Houston Sports Ass'n,* at 296.

*Claims.*

HSA has filed a motion for summary judgment claiming that (a) it had no market share because it did not broadcast the Astros baseball games; (b) KENR had only a small share of the product market in the Galveston-Houston area; and (c) no radio station has a significant impact on competition in this area. KYST has presented no evidence to contradict HSA. Instead, KYST argues that the product market is the broadcast advertising associated with the Astros games, in which HSA naturally has a 100% monopoly.

*Summary Judgment.*

The party seeking a summary judgment must establish that: (1) no genuine dispute exists about any material fact, and (2) the law entitles it to judgment. Fed.R.Civ.P. 56(c); *Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir.1985); *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983). Until the movant has properly supported the motion, no response is required. Once this is done, however, to preclude the rendition of a summary judgment, the nonmovant must present evidence demonstrating specific, contested facts that are material to the issues requiring adjudication. Fed.R.Civ.P. 56(e). For this purpose mere allegations or denials will not be sufficient. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Union Planters Nat'l Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982).

*Product Market.*

■ "The market to be studied to determine when a producer has monopoly power ... are the markets composed of products that have reasonable interchangeability for the purposes for which they are produced." *United States v. E.I. DuPont de Nemours & Co.,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). The court has previously held that the product market is "advertising spots created by radio broadcast formats that compete with the advertising spots created by the broadcast of the Astros baseball games." *Houston Sports Ass'n,* at 296. Despite this ruling, KYST continues to claim that the product market is only the broadcast advertising associated with the Astros games. The error of this assertion is obvious. *See Bushie v. Stenocord Corp.,* 460 F.2d 116, 121 (9th Cir. 1972).

*Geographic Market Share.*

■ The U.S. Supreme Court set out the rule to be followed when reviewing relevant markets.

> Every manufacturer is the sole producer of the particular commodity it makes but its control ... of the relevant market depends upon the availability of alternative commodities for buyers: i.e., whether there is a cross-elasticity of demand between [advertising during Astros games and other radio formats in the Houston Galveston area]. This interchangeability is largely gauged by the purchase of competing products for similar uses considering the price ... of the competing commodities.

*DuPont de Nemours, supra,* 76 S.Ct. at 999.

There is no illegal monopoly where, although HSA controlled broadcast of the Astros games in the Houston-Galveston market, there existed competition and in-

terchangeability with other radio formats. *See id.* at 994. "The ultimate consideration ... is whether the defendants control the price and competition in the market." *Id.* at 999. Unless HSA used its natural monopoly to gain control of the relevant market in which broadcast of Astros games competes, the antitrust laws are not violated. *Bushie,* at 120.

The parties agree that the geographic market is the Houston-Galveston area. For KYST to succeed, it must prove that KENR had and exercised monopolistic control of an interchangeable product in the Houston-Galveston market.

There are about 40 radio stations competing in the Houston-Galveston market. No radio station has more than a ten percent share of the listening audience as determined by expert testimony based on the Arbitron ratings. KYST does not challenge this. There has been no contest to the fact that KENR did not attempt to price and did not price Astros-related advertising time differently from the same time periods when it presented country music. KYST's expert also testified that KENR's profit did not increase by its broadcasting the Astros games and that its ratings and its profits decreased during 1981, 1982, and 1983. KYST's expert admitted that KENR did not gain advertising power in the advertising market by broadcasting the Astros games. Without greater power than the other radio stations, it is inconceivable that KENR or HSA could affect competition in an anti-competitive way. Because KENR's share of the relevant market is minimal and HSA's is non-existent,[1] the court is compelled to conclude that any conspiracy between HSA and KENR could not have had the power to affect competition in the market and did not affect competition.

KYST has no basis for a claim against HSA under the Sherman Antitrust Act, and similarly KYST has no basis for a claim under the Texas Free Enterprise and Antitrust Act of 1983, which mirrors the feder-

---

**1.** HSA has no market share because it has no broadcast facilities; therefore, KYST's claim against HSA is dependent on the viability of KYST's claim against KENR.

al act and is to be construed in harmony with it. *Id.* at 298; Tex.Bus. & Comm. Code Ann. §§ 15.05(a) and (b).

*Breach of Contract*

■ KYST claims that HSA terminated its license without a legal defense. Actually, the claim is articulated as wrongful termination, one of the fuzzy claims produced through a combination of no scholarship and suspended reason in law and economics. Whatever the label, the claim fails.

A gratuitous license is revocable at the will of the grantor, even if the "defendant had spent large sums in reliance on the written consent prior to its revocation." *Durgom v. Columbia Broadcasting System, Inc., et al.,* 29 Misc.2d 394, 214 N.Y. S.2d 752 (1961). Further, HSA was merely exercising "the normal right of a producer to select the outlet for its product." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). KYST gave no consideration for the license, and KYST has no evidence of detrimental reliance or the cost of acquiring alternative programming to cover the loss of the Astros.[2] KYST, moreover, misled HSA into granting the license by not revealing its intention to boost KYST's radio power seven fold with the consequence that the station would be able to reach the Houston metropolitan area as well as the Galveston market it had discussed with HSA when negotiating the license.

*Conclusion.*

■ With no monopoly power in KENR, any action by HSA to control its natural monopoly was not an unlawful one. With no pricing differences, there were no tendencies to undermine competing broadcasters' market ability or financial stability. There is no articulation of an antitrust injury. The license withdrawal was not a breach of contract by HSA, rather it was a response to an anticipatory breach by

KYST. The breach of license, if there was one, is not actionable because the contract was without consideration or reliance. Henderson will take nothing, and the costs of court will be taxed against Henderson.

---

2. KYST claims they had advertised on billboards that KYST would be broadcasting the games. KYST benefitted from this advertising regardless of whether the advertisements said KYST and Astros or just KYST. KYST has presented no evidence that they tried to acquire alternative programming. Any marginal loss incurred by KYST in renting the billboard space is not addressed by KYST.