431 F.2d 1211
 Joseph A. RICCHETTI, individually and dba Kings County Distributing Co., Bay Beverage, Inc., a corporation, Louis C. Rossi, individually and dba Rossi Distributing Co., on behalf of themselves and all other Burgermeister beer distributors similarly situated, Appellants,
v.
MEISTER BRAU, INC., a corporation, Appellee.
 No. 25505.
 United States Court of Appeals, Ninth Circuit.
 September 11, 1970.
 
 1
 Timothy H. Fine (argued) and G. Joseph Bertain, Jr., San Francisco, Cal., for appellants.
 
 
 2
 Brobeck, Phleger & Harrison, San Francisco, Cal., for appellee.
 
 
 3
 Before CHAMBERS and MERRILL, Circuit Judges, and TAYLOR, District Judge.*
 
 FRED M. TAYLOR, District Judge:
 
 4
 This private antitrust action was brought by three wholesale beer distributors against the appellee Meister Brau, Inc., seeking to enjoin the appellee from terminating the status of the appellants as distributors of Burgermeister beer. Federal jurisdiction is invoked under Section 16 of the Clayton Act, 38 Stat. 737 (1914), as amended, 15 U.S.C. § 26, and jurisdiction on appeal is conferred by Title 28, U.S.C. § 1291.
 
 
 5
 The appellants only sought injunctive relief in the District Court, praying for a temporary restraining order and preliminary injunction enjoining the attempted termination of the appellants as distributors pending a final adjudication of the action on the merits, and for a permanent injunction against such termination except for good cause and with appropriate notice. The District Court issued a temporary restaining order, but after an extensive hearing on the motion for preliminary injunction, denied the motion and vacated the temporary restraining order. An appeal was taken to this Court from the denial of the motion for preliminary injunction. Following oral argument on the appeal, the proceedings were remanded to the District Court by agreement of counsel and on the advice of this Court, for a decree by the District Court on the issue of the permanent injunction. By stipulation of the parties, the issue of the permanent injunction was submitted to the District Court on the record made on its prior hearings on the motion for preliminary injunction. On March 3, 1970, the District Court entered its judgment denying any relief to the appellants, and dismissed the action with prejudice, from which judgment the present appeal is perfected. We affirm.
 
 
 6
 The facts underlying this litigation are not in substantial dispute. On December 29, 1961, the Schlitz Brewing Company purchased the assets of Burgermeister Brewing Company. In 1964, the United States filed suit against Schlitz, alleging a violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. After trial on the merits, the United States District Court for the Northern District of California entered judgment holding that the acquisition violated the Clayton Act.[1] The final judgment and decree ordered Schlitz to divest itself of the Burgermeister assets. In 1969, the District Court approved an agreement between Schlitz and Meister Brau, appellee herein, for the sale to Meister Brau of the Burgermeister assets. The appellee is a corporation engaged in the production and sale of beer. The sale of the Burgermeister assets was consummated in November, 1969.
 
 
 7
 On November 4, 1969, a meeting was held by Meister Brau's officers to determine which distributors, including those who had distributed Burgermeister beer for the Schlitz corporation, would be appointed for distribution of Burgermeister beer. Following this meeting, Meister Brau informed the three appellant corporations and five other distributors that after November 17, 1969, they would no longer be appointed as Burgermeister distributors. Other distributors, including some who had not previously handled Burgermeister beer, were appointed to assume the territories served by the terminated distributors, This action followed, seeking to enjoin the termination.
 
 
 8
 Section 7 of the Clayton Act, 15 U.S. C. § 18, contemplates an action where the effect of an acquisition of stock or assets is to substantially lessen competition or tends to create a monopoly in any line of commerce.[2] The judicially approved acquisition by Meister Brau of the Burgermeister assets, in and of itself, is not challenged by the appellants. The appellants contend that acts by an acquiring corporation, subsequent to an otherwise valid acquisition, may cause the acquisition to fall afoul of Section 7 if an effect of those acts may be to substantially lessen competition or tends to create a monopoly, and that Meister Brau's termination of the appellants as distributors will force some distributors to go out of business because of the reduced volume of sales, thereby reducing the number of viable competitors in the business of wholesale beer distribution in California. Appellants further contend that there is currently a trend toward concentration in the market of wholesale beer distribution, because the number of wholesale beer distributors in California has significantly declined in recent years.[3]
 
 
 9
 The appellants' proposition that subsequent anticompetitive activities may bring an otherwise valid acquisition of corporate stock or assets within the proscriptive scope of Section 7 finds support in United States v. E. I. Du Pont De Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). Beyond the rule of law asserted, however, appellants' reliance on the Du Pont case is misplaced. In that case, the Supreme Court found that the Du Pont Company, having purchased substantial amounts of General Motors stock, subsequently used the influence of that stock ownership to entrench itself as a primary supplier to General Motors of fabrics, paints and related finishing products used in the automobile industry, which resulted in the diminution of effective competition by other suppliers of those products.
 
 
 10
 In the instant case, there is neither allegation nor proof in the record that Meister Brau's selection of its distributors was conditioned on requirements of any acts to be done by the appellants which would enable Meister Brau to gain any undue competitive advantage over other beer producers.[4] There was evidence in the record from which the District Court could properly have found that the termination of the appellants as distributors was based on an evaluation of the physical facilities, transportation equipment, personnel, and past sales records of each of the appellants, rather than on any trade-restraining requirements imposed on the appellants.
 
 
 11
 It is well established that a manufacturer or producer has the right to deal with whom he pleases and to select his customers at will, so long as there is no resultant effect which is violative of the antitrust laws. Thus, a manufacturer may discontinue a relationship, or refuse to open a new relationship for business reasons which are sufficient to the manufacturer, and adverse effect on the business of the distributor is immaterial in the absence of any arrangement restraining trade or competition. United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969); Scanlan v. Anheuser-Busch, Inc., 388 F.2d 918, 921 (9th Cir. 1968); Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283, 286-287 (6th Cir. 1963); Timken Roller Bearing Co. v. Federal Trade Commission, 299 F.2d 839 (6th Cir. 1962), cert. denied, 371 U.S. 861, 83 S.Ct. 118, 9 L.Ed.2d 99 (1962); House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2d Cir. 1962). In United States v. Arnold Schwinn & Co., supra, 388 U.S. at 376, 87 S.Ct. at 1864, the Supreme Court set out the rule, with its limitations, that the manufacturer has a right to choose his dealers:
 
 
 12
 "At the other extreme, a manufacturer of a product other and equivalent brands of which are readily available in the market may select his customers, and for this purpose he may `franchise' certain dealers to whom, alone, he will sell his goods. Cf. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). If the restraint stops at that point — if nothing more is involved than vertical `confinement' of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act."
 
 
 13
 This court has previously held that a manufacturer or supplier has a legitimate interest in the quality, competence and stability of his distributors, and, if dissatisfied with a distributor, may properly sell his product to a more viable competitor. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., supra. Where, as here, a supplier seeks no more than a better equipped and more aggressive distributor for his product, his conduct may in fact be more beneficial than detrimental to competition, and is not condemned by either the Sherman or Clayton Acts. As the antitrust laws do not prohibit a business from fairly entering into a competitive market, neither do they prohibit its improvement of its competitive stature in the product market. Scanlan v. Anheuser-Busch, Inc., supra, 388 F.2d at 921.
 
 
 14
 We do not agree with the appellants' attempted distinction of the foregoing authorities on the ground that the cases cited were "refusal to deal" or "exclusive agency" cases which involved no acquisition of stock or assets. Termination of a distributorship does not become a violation of Section 7 simply because the manufacturer or supplier taking such action has recently been involved in a merger or acquisition of stock or assets with another company. Cf. Salerno v. American League of Professional Baseball Clubs, 429 F.2d 1003 (2d Cir. 1970). There must be a further showing that, as a result of the post-merger acts, the merger has an effect on commerce which is proscribed within the meaning of all elements of Section 7. On this record, the appellants have failed to show that their termination as distributors has caused the merger to bear anticompetitive tendencies sufficient to bring such merger within the scope of Section 7.
 
 
 15
 In the absence of any showing of a violation of Section 7, the appellants must necessarily establish their right to relief under traditional refusal-to-deal principles evolved under other provisions of the antitrust laws. The authorities heretofore cited amply support our conclusion that in this respect the appellants have also failed to meet their burden.
 
 
 16
 No error of law appears in the judgment of the District Court, and its conclusions cannot, on this record, be said to be clearly erroneous.
 
 
 17
 The judgment of the District Court is accordingly affirmed.
 
 
 
 Notes:
 
 
 *
 Hon. Fred M. Taylor, United States District Judge, for the District of Idaho, sitting by designation
 
 
 [1]
 United States v. Jos. Schlitz Brewing Co., 253 F.Supp. 129 (N.D.Cal.1966) aff'd mem., Jos. Schlitz Brewing Co. v. United States, 385 U.S. 37, 87 S.Ct. 240, 17 L.Ed.2d 35 (1966), rehearing denied, 385 U.S. 1021, 87 S.Ct. 702, 17 L.Ed.2d 560 (1967)
 
 
 [2]
 Section 7 of the Clayton Act, 15 U.S.C. § 18, provides in part:
 "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly. * * * *."
 
 
 [3]
 Appellants argue that the aggravation of this trend, which will result from some of the appellants going out of business, is sufficient to bring this case within the outer limits of anticompetitive concentration established in United States v. Pabst Brewing Co., 384 U.S. 546, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966) and United States v. Von's Grocery Co., 384 U.S. 270, 86 S.Ct. 1478, 16 L.Ed.2d 555 (1966)
 
 
 [4]
 See e. g., United States v. Jos. Schlitz Brewing Co., supra, n. 1, 253 F.Supp. at 141-142 (distributors required to distribute only one manufacturer's brands); United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967) (restrictions imposed on territories and retail dealerships); Osborn v. Sinclair Refining Co., 324 F.2d 566 (4th Cir. 1963) (price fixing)