**RALPH C. WILSON INDUSTRIES, INC.,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., Field Communications Corporation; Miami Valley Broadcasting Corporation; Chronicle Broadcasting Company; Viacom International, Inc.; Tandem Productions, Inc.; Twentieth Century-Fox Film Corporation, et al., Paramount Pictures Corporation; Warner Bros., Inc.; MCA Inc.; Metro-Goldwyn-Mayer, Inc.; United Artists Corporation.**

**No. C-80-4614 SC.**

United States District Court, N.D. California.

Nov. 28, 1984.

Craig Corbitt, Furth, Fahrner, Bluemle, Mason & Wong, San Francisco, Cal., for plaintiff.

Cooper, White & Cooper, San Francisco, Cal., for Chronicle Broadcasting Co.

Morrison & Foerster, San Francisco, Cal., for Field Communications.

Sidley & Austin, Washington, D.C., for Field Communications.

Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for supplier defendants, Viacom, 20th Century, Paramount, Warner Bros., M.C.A. Television, Metro-Goldwyn-Mayer, United Artists.

Farella, Braun & Martel, San Francisco, Cal., Dow, Lohnes & Albertson, Washington, D.C., for Miami Valley Broadcasting.

AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CORRECTING TYPOGRAPHICAL ERRORS AT PAGE 29 LINES 10–11

CONTI, District Judge.

This matter is before the court on defendants' motion for summary judgment. The background is as follows.

Plaintiff is the owner of a television station, KICU Channel 36 (jointly referred to as "plaintiff" herein). Defendants Chronicle Broadcasting Co. (KRON Channel 4), Miami Valley Broadcasting Co. (KTVU Channel 2) and Field Communications Corp. (KBHK Channel 44) are television stations located in the San Francisco Bay Area. These three defendants will be referred to as the "station defendants."[1] Defendants Viacom International, Inc., P.I.T.S. Films,[2] Twentieth Century-Fox Film Corp., Paramount Television Domestic Distribution Inc., Warner Bros. Television Distribution, Inc., M.C.A. Television Ltd., Metro-Goldwyn-Mayer, Inc., and United Artists Television, Inc., are suppliers or distributors of television programs. These defendants will be referred to as the "supplier defendants."

Plaintiff filed this action on December 29, 1980.[3] Plaintiff's complaint alleges that defendants have violated the antitrust laws because of various practices they follow concerning the licensing of programs and conspiracies to boycott plaintiff. Plaintiff is pursuing three claims against defendants based upon these alleged practices.[4] First, plaintiff claims that all defendants have violated the Sherman Act by unreasonably restraining trade. Plaintiff contends that defendants unreasonably restrain trade by licensing programs on an exclusive basis as against plaintiff, by making the licenses unreasonably long and by incorporating, implicitly or explicitly, rights of first refusal into those licenses. Secondly, plaintiff claims that the station defendants have committed a *per se* violation of the Sherman Act by a horizontal conspiracy to boycott plaintiff. Plaintiff alleges that these three defendants have conspired, through direct communication, to exercise exclusivity of programming against plaintiff. Thirdly, plaintiff claims that defendant Miami Valley Broadcasting Co. has committed a *per se* violation of the Sherman Act by conspiring with the Independent Television News Association (ITNA) to exclude plaintiff from membership in that organization. These three claims will be developed in more detail below.

This case has been ongoing for almost four years. In 1982, the defendants filed a motion seeking summary judgment. On the state of the record at that time, the court denied that motion. On August 9, 1984, the court held a status conference in order to clarify the issues and facts for trial. At that conference, the court and parties explored whether it would be appropriate to reconsider defendants' motion for summary judgment given the extensive record now before the court. As a consequence of that conference, the station defendants moved to renew their motion for summary judgment, in which they were joined by the supplier defendants. The court granted that motion and set a briefing schedule to permit all parties ample opportunity to brief the legal and factual issues in this case. The court specifically directed plaintiff to present a complete brief of its factual arguments which might preclude summary judgment against it, together with a detailed summary of the specific evidence plaintiff intends to present at trial to support those arguments. After this thorough and voluminous supplemental briefing, defendants' renewed motion for summary judgment is now before the court.

The considerations the court must address in deciding whether summary judgment is appropriate in this case are as follow. Generally, summary judgment is

1. Defendant American Broadcasting Co. (KGO–TV Channel 7) was dismissed pursuant to stipulation on June 7, 1982.

2. Substituted as a defendant in place of Tandem Productions, Inc.

3. Plaintiff's Supplemental Complaint was filed on March 29, 1982.

4. Plaintiff originally pursued five antitrust claims against defendants. *See* Transcript of August 9, 1984, hearing; Plaintiff's March 8, 1983, Pretrial Statement. Plaintiff has now abandoned its horizontal conspiracy claim against the supplier defendants and all the monopoly claims and is pursuing only these three claims. *See* Plaintiff's September 4, 1984, Statement of Contentions and Proof.

appropriate only when the moving party meets his burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see, Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bank of California, N.A. v. Opie*, 663 F.2d 977, 979 (9th Cir.1981); *State ex rel. Edwards v. Heimann*, 633 F.2d 886, 888 (9th Cir.1980).

■ Plaintiff contends that this rule should be applied particularly strictly in antitrust cases, making summary judgment less available in such cases than in civil actions generally. Although there is some support for this contention, the better position, advanced by respected antitrust writers and recognized by the courts, is that summary judgment is equally available in antitrust cases.[5] *See, e.g., Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1167 (7th Cir.1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979); *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); II P. Areeda & D. Turner, *Antitrust Law* ¶¶ 316–17 (1978); Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465 (1984).

The argument that summary judgment should be hesitantly granted in antitrust cases is generally founded upon language used by the Supreme Court in *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In *Poller*, the Court stated:

> summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of

the alleged conspirators, and hostile witnesses thicken the plot.

*Poller*, 368 U.S. at 473, 82 S.Ct. at 491. As antitrust writers point out, however, this language must be read in the context of *Poller*'s genuinely disputed factual issues concerning motive and intent and the discovery problems therein, and not as a rule that summary judgment should rarely be granted in antitrust cases. *See, e.g.*, II P. Areeda & D. Turner, *Antitrust Law* ¶ 316.

In fact, some writers believe that summary judgment is often particularly appropriate in antitrust cases because of the "fearful dimensions" of such cases, and the fact that many suits are motivated by "commercial disappointment" rather than genuine antitrust problems. II P. Areeda & D. Turner, *Antitrust Law* ¶ 316 at 57–58 (1978); *see also* J. von Kalinowski, *Antitrust Laws & Trade Regulation* § 113.02 at 113–5 to 113–7 (1984); *c.f., Lupia v. Stella D'Oro*, 586 F.2d 1163; *Zweig v. Hearst*, 521 F.2d 1129. Given the enormous expenditure of time and other resources commonly necessary in antitrust cases, the complexity of the issues and general inexperience of jurors in this area, as well as the need for uniformity and foreseeability in interpretations of the antitrust laws, the court should, rather, be particularly alert to granting summary judgment in appropriate cases. *See, e.g., Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620, 622 (9th Cir. 1977); II P. Areeda & D. Turner, *Antitrust Law* ¶ 316 at 69–70.

■ The posture of this case is particularly appropriate for a consideration of summary judgment. This case was filed in 1980. Since that time, the parties have conducted extensive discovery and do not contemplate further discovery. Plaintiff

---

5. *See, e.g., Robert's Waikiki U–Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 732 F.2d 1403 (9th Cir.1984); *Fine v. Barry and Enright Productions*, 731 F.2d 1394 (9th Cir.), *cert. denied*, ─── U.S. ───, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir.1983); *Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*, 710 F.2d 1366 (9th Cir.1983); *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service*

Bureau, 701 F.2d 1276 (9th Cir.), *cert. denied*, ─── U.S. ───, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983); *JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc.*, 698 F.2d 1011 (9th Cir.), *cert. denied*, ─── U.S. ───, 104 S.Ct. 106, 78 L.Ed.2d 109 (1983); *General Business Systems v. North American Phillips Corp.*, 699 F.2d 965 (9th Cir. 1983); *Continental T.V., Inc. v. G.T.E. Sylvania Inc.*, 694 F.2d 1132 (9th Cir.1982).

has not indicated that it needs further discovery to adequately defend against defendants' motion for summary judgment. As noted above, the court has directed plaintiff to submit detailed briefs setting forth the specific evidence it intends to use to support its claims at trial. In the context of this fully developed record, if the court finds that a directed verdict for defendants would be required even if all plaintiff's proffered evidence were admitted at trial, then the court should not be hesitant to grant summary judgment for defendants at this stage of the proceeding. *See, First National Bank v. Cities Service Co.*, 391 U.S. 253, 274–90, 88 S.Ct. 1575, 1585–1593, 20 L.Ed.2d 569 (1968) [holding that, even though plaintiff's evidence showing conspiracy might present a jury question, defendants' evidence to the contrary was so overwhelming that summary judgment was appropriate]; *see also*, II P. Areeda & D. Turner, *Antitrust Law* ¶ 316 at 61; Schwarzer, *Summary Judgment, etc.*, 99 F.R.D. at 468–70. Applying this standard to the facts and arguments set forth below, the court finds that summary judgment in favor of defendants is appropriate in this case.

### A. *Rule of Reason Claim*

Plaintiff's primary claim against the defendants is that they have unreasonably restrained trade through a vertical contract by their combined practices of licensing television programs on an exclusive basis, making the licenses unreasonably long, and by implicitly or explicitly incorporating rights of first refusal into those licenses. The factual basis for these contentions, referred to herein as plaintiff's "rule of reason" claim, is set forth below. First, however, is a brief summary of the statutory basis of plaintiff's claim.

Section 4 of the Clayton Act, 15 U.S.C. § 15, confers a private right of action for treble damages upon "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." "Antitrust laws" is defined to include the Sherman Act, 15 U.S.C. §§ 1–7. 15 U.S.C. § 12(a). Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ...." This blanket proscription, however, has been interpreted to prohibit only "unreasonable" restraints of trade. *See, e.g., Standard Oil v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). These sections, therefore, form the statutory basis for plaintiff's claim against defendants for their allegedly unreasonable restraint of trade.

The unreasonable restraint of trade complained of is as follows. The supplier defendants herein are in the business of licensing television programs to television stations. The undisputed practice of these suppliers is to license programs to the stations on an exclusive basis after a competitive bidding process among interested stations. Thus, for example, a supplier would sell an exclusive license for M\*A\*S\*H to defendant KTVU, who would then be the only station in that area permitted to air M\*A\*S\*H (or specified episodes of M\*A\*S\*H) for the duration of the license.

It is undisputed that the station defendants herein enforce this exclusivity against all television stations, including plaintiff, which they consider to be located in the "San Francisco" market area. This area includes San Francisco, Oakland and San Jose, as well as most of the area around these cities. The area includes all station defendants and plaintiff, as well as several non-party stations. The scope of this exclusive licensing area is determined on the basis of the A.C. Nielson Co. and Arbitron Co. ratings services' categorization of geographic area into market groups, both of which ratings services include San Francisco and San Jose in the same market group.

Plaintiff does not contend that the practice of licensing television programs on an exclusive basis automatically violates the Sherman Act's prohibition of restraints of trade. In fact, plaintiff itself licenses programs on an exclusive basis. All parties agree that exclusive licenses, as such, may

further competition by providing an incentive to the station to invest in promotion and development of the program product and do not constitute a *per se* violation of Section 1.

Rather than argue that exclusive licenses automatically violate Section 1 of the Sherman Act, plaintiff contends that they constitute an unreasonable restraint of trade when enforced by the station defendants against plaintiff. Plaintiff argues that the station defendants are entitled to license programs on an exclusive basis, but that that exclusivity should not apply to plaintiff because it is not in the same "relevant market" as the station defendants. Plaintiff submits that the station defendants are licensed to and operate in the San Francisco-Oakland Bay Area market. Plaintiff argues that it, on the other hand, is located in and operates in the "South Bay." (Plaintiff does not define the area included within the "South Bay," but it apparently covers San Jose and other areas in and around Santa Clara County.) Accordingly, plaintiff contends that it should be placed in a different geographic market than the station defendants for exclusivity purposes. To illustrate, plaintiff's argument is that defendant KTVU should be permitted to obtain a license for M*A*S*H which is exclusive against the other station defendants and other stations in the San Francisco area, but not those in the "South Bay" area, which includes plaintiff. Consequently, plaintiff could also bid for and obtain an exclusive license to show M*A*S*H, which would be exclusive only against other South Bay stations. Thus, plaintiff argues that the exclusive licenses violate the antitrust laws because they are overbroad in geographic scope, are unreasonably long in duration and incorporate unreasonable rights of first refusal.

The economic motivation for this suit is to enable plaintiff to license quality programming[6] at a price below that paid by the station defendants, such as KTVU, for their exclusive licenses to such programs. It is uncontested that the level of prices for exclusive licenses for quality programming is primarily determined by the broadcast market of the prospective licensees. Presently, all the station defendants and plaintiff are placed in the same market for purposes of bidding for the supplier defendants' quality programming. Thus, if defendant KTVU bids $150,000 for an exclusive license for M*A*S*H, plaintiff must better that bid to obtain the license. Plaintiff has made no argument and there is no evidence showing that plaintiff has been excluded from bidding for quality programming at these price levels. In fact, the evidence shows that if plaintiff wished to bid at this "San Francisco" market price, it could obtain quality programming.

Plaintiff contends that, as a small UHF station,[7] it is not commercially feasible for it to bid at the same price levels as the station defendants to obtain quality programming. What plaintiff seeks is to be placed in some market other than that containing the station defendants for purposes of bidding for quality program licenses. If, for example, plaintiff were placed in the Salinas-Monterey market, in which non-party channel 11 is placed, it could bid for quality programming at a much lower price than that paid by the station defendants. The outcome would be, for example, that defendant KTVU would obtain a license for M*A*S*H, exclusive against the other San Francisco stations, but not plaintiff, for $100,000, while plaintiff could also license M*A*S*H, exclusive against other South Bay stations, for, say, $15,000. That is the result plaintiff seeks to achieve by means of this antitrust suit. This, then, is the factual basis for plaintiff's rule of reason antitrust claim.

---

**6.** Defined, generally, as programming which is high in the viewer ratings. *See, e.g.,* Davison Declaration ¶¶ 11–13; Plaintiff's August 2, 1982, Memorandum of Points & Authorities at 29:1–6.

**7.** A UHF (ultra high frequency) station's signal is generally much less powerful than that of a VHF (very high frequency) station. A UHF station generally sells for much less than a VHF station. *See, e.g.,* Park Declaration ¶¶ 45–61.

■ The court will briefly summarize the legal standards to be applied to plaintiff's rule of reason claim. First, plaintiff must show that the defendants' challenged practices injure, or decrease, competition in the relevant market. If plaintiff fails to prove that competition has been injured, it cannot prevail. *See, Standard Oil Co. v. United States*, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949); *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291 (9th Cir.), *cert. denied*, 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Gough v. Rossmoor Corp.*, 585 F.2d 381, 385 (9th Cir.), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). Secondly, if plaintiff has shown an injury to competition, it must then show that the challenged restraint is "unreasonable." *See, e.g., Standard Oil v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). To show that the restraint is unreasonable, plaintiff must, in this case, prove one of two things. First, plaintiff may show that the restraint is unreasonable because it applies to television stations which are not in "substantial competition" with each other. *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 146, 68 S.Ct. 915, 923, 92 L.Ed. 1260 (1948). If plaintiff cannot show that it is not in substantial competition with the station defendants, it may nevertheless prevail if it can show that the challenged practices of exclusivity, length of license and rights of first refusal, are "unreasonable" under the circumstances of this case. *See, e.g., Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49–59, 99 S.Ct. 2549, 2557–62, 53 L.Ed.2d 568, 53 L.Ed.2d 568 (1977); *United States v. Paramount Pictures,*

*Inc.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948). For the reasons set forth below, the court holds that plaintiff has not, as a matter of law, met its burden of offering evidence sufficient to support a finding that defendants' exclusivity practices unreasonably restrain trade.

### 1. *Injury to Competition.*

As noted above, the first inquiry must be whether plaintiff has presented genuine issues of material fact which would support a finding that defendants' exclusivity practices injure competition. In order to meet this first test, plaintiff may pursue one of three avenues. First, it may offer evidence to show that the defendants have conspired to restrain competition. Plaintiff does not make this argument and offers no evidence which could justify a finding that the defendants conspired. Secondly, plaintiff could offer evidence showing that the defendants' exclusivity practices actually injure competition. This is the argument plaintiff primarily relies upon. As shown below, however, plaintiff fails to offer evidence of injury to competition which would withstand a directed verdict for defendants. Thirdly, plaintiff could, as an alternative, seek to show that a defendant has "market power," tending to make any action of that defendant have a substantial effect on competition.[8] Plaintiff offers some argument on this point but, as addressed below, it is unpersuasive. Accordingly, as set forth below, the court holds that plaintiff has failed to offer evidence which would support a finding that defendants' exclusivity practices injure competition.

■ The first inquiry is whether plaintiff has offered evidence which could support a finding that the exclusive license contracts

---

**8.** The court need not decide, for purposes of this motion, whether plaintiff must prove that a defendant has market power in order to support a rule of reason antitrust claim. Plaintiff, relying upon *N.C.A.A. v. Board of Regents*, —— U.S. ——, 104 S.Ct. 2948, 2965, 82 L.Ed.2d 70 (1984), contends that market power need not be proved. Defendants, relying upon *General Leaseways v. National Truck Leasing*, 744 F.2d 588, 1984–2 Trade Cases ¶ 66,205 (7th Cir.1984) and the pro-

posed Department of Justice guidelines concerning vertical restraints (*see* Mr. Popofsky's November 1, 1984, letter to this court), argue that plaintiff cannot avoid summary judgment because it offers no proof that any defendant has market power. This court need not decide that issue. In this case plaintiff has not shown a conspiracy, actual injury to competition *or* market power.

injure competition. In order to address this inquiry, the court must first determine what is the "relevant market" in which competition has allegedly been restrained. *See, Gough v. Rossmoor,* 585 F.2d at 385–89. This "relevant market" is generally determined by reference to both the relevant product market and the relevant geographic market. *See, e.g.,* Harris & Jorde, *Antitrust Market Definition: An Integrated Approach,* 72 Cal.L.Rev. 1, 46–52 (1984). In this case, the parties agree, and the court accepts, that the relevant product market is quality television programming. The relevant geographic market, however, is more complex.

Plaintiff contends that the relevant geographic market is the "South Bay." Although they contested this definition in their earlier motion for summary judgment, defendants now accept, for purposes of this motion, plaintiff's definition. The court, however, is not persuaded by this definition.

 The relevant market is not defined by the parties. *See, e.g., Gough v. Rossmoor Corp.,* 585 F.2d at 389. Rather, the court must consider the commercial realities of the situation to arrive at the definition of the relevant market.[9] *See, e.g., Brown Shoe Co. v. United States,* 370 U.S. 294, 336–37, 82 S.Ct. 1502, 1529–30, 8 L.Ed.2d 510 (1962); Harris & Jorde, *Antitrust Market Definition,* 72 Cal.L.Rev. at 47–52, 65–66. In this case, the commercial realities are so clear that the court holds that the relevant geographic market is the entire San Francisco-Oakland-San Jose Bay Area, as currently defined.

These commercial realities are as follow. First, the Federal Communications Commission (FCC) considers San Jose and San Francisco to be in the same market. *See,* 47 C.F.R. § 76.51; Memorandum Opinion, 37 R.R.2d 695, 698 (1976); 40 R.R.2d 473, 477–78 (1977). Secondly, the two recognized national ratings services, A.C. Nielson Co. and Arbitron Co., consider San Jose and San Francisco to be in the same market. *See,* McClure Affidavit ¶¶ 16–17 (Exhibit CC to Levy Declaration); Broadcasting/Cablecasting Yearbook 1982 at B–1 (Exhibit A to Thurston Declaration); *c.f.,* 47 C.F.R. § 73.658(1)(1)(vii); *WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003 (N.D.N.Y.1980); Davison Deposition 615:24–617:3; 992:23–993:20; 1100:22–1101:23; Heath Deposition 290:14–20; Romanelli Deposition 975:3–12; Snyder Deposition 5:13–19; Wischmeyer Deposition 208:4–8; Bell Deposition 48:16–49:12; Heath Deposition 28:6–30:14; Dean Deposition 26:2–12; Welch Deposition 39:17–23. Thirdly, there is a large overlap in the signal coverage of plaintiff's and the station defendants' signals. *See, e.g.,* Exhibit DD to Levy Declaration; Bell Deposition 59:1–5; Wischmeyer Deposition 232:23–28; Maguire Exhibits 32–33; Heath Exhibit 4; Romanelli Exhibit 72; Welch Deposition 18:22–20:23, 34:3–5, 36:4–38:4, 37:7–38:4, 48:24–49:12, Exhibits 3, 7. Finally, plaintiff and the station defendants share a substantial overlap of viewers. *See,* Arbitron Ratings (1984); Welch Deposition Exhibit 5; Maguire Deposition 1047; Hirshey Deposition 951; Scheiner Deposition 93–94; Ball Deposition 242–43, 511–12; Frischer Deposition 84–85; Plaintiff's Contentions ¶¶ 81, 202–04; Park Declaration ¶¶ 21–25.

---

**9.** As one antitrust writer has stated:

In some cases, the evidence adduced may not permit the court confidently to decide the question of market definition. For example, the plaintiff's prima facie definition and defendant's rebuttal definition might both be plausible. In that situation, the parties would do well to present—and the trier of fact to consider—other evidence of market power that might assist the court in deciding which market definition is the more appropriate. Harris & Jorde, *Antitrust Market Definition: An Integrated Approach,* 72 Cal.L.Rev. 1, 66 (1984).

This court adds that it may in fact find, after considering the commercial realities of the situation, that some market definition other than that advanced by the parties is the most appropriate. It is the facts and realities of the situation that establish the actual market—not the desires or wishes of the parties. Unlike most controversies where the parties might stipulate as to the facts surrounding the lawsuit, in antitrust cases it is market competition that the court is concerned with, not competitors.

These facts are so clear that a reasonable jury would have to find that the relevant geographic market is the entire San Francisco Bay Area, including San Jose. Accordingly, the court holds that the relevant market in this case is the San Francisco Bay Area quality television programming market. Even were the court to accept the parties' definition of the relevant market as the "South Bay" quality programming market, however, the outcome would be the same. For the reasons set forth below, it is clear that plaintiff cannot prove that defendants' exclusivity practices unreasonably restrain trade in either market.

■ As noted above, the court must determine whether plaintiff has produced evidence, sufficient to avoid a directed verdict, showing injury to competition in the relevant market. The court finds that plaintiff has not met that burden. As argued more fully in the defendants' Memoranda of Points and Authorities, it is not sufficient for plaintiff to establish an injury to itself or its own competitive position. *See, e.g., Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*, 710 F.2d 1366, 1373 (9th Cir.1983); *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service Bureau*, 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983); *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); *Gough v. Rossmoor Corp.*, 585 F.2d at 385–89. This is all plaintiff has done. Plaintiff offers no evidence tending to show that it cannot obtain quality programming, that prices are fixed, that program offerings are detrimentally affected, or that program output has in any way been restricted. Some showing of this type is necessary to establish injury to competition. *See, e.g., National Collegiate Athletic Association v. Board of Regents,* —— U.S. ——, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984); *Mid-West Underground Storage, Inc. v. Porter,* 717 F.2d 493 (10th Cir.1983); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983); *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.,* 637 F.2d 1376 (9th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

■ Despite the fact that plaintiff has produced no evidence to show that defendants' exclusivity practices actually injured competition, a jury might find injury to competition if plaintiff proved that any one defendant[10] has market power.[11] If a defendant has market power, it is much more likely that its actions can injure competition. Thus, if plaintiff submitted evidence tending to show that a defendant has market power, the court might permit the issue to go to the jury. The court finds, however, that plaintiff has not offered evidence from which a jury could find that any defendant has market power.

■ Plaintiff has offered no evidence showing that any one defendant has market power. The evidence shows that the ten or more Bay Area stations all compete vigorously in both the South Bay and the Bay Area as a whole. The evidence also shows that the supplier defendants actively compete in both areas. *See,* Park Deposition 45–47; Fisher Declaration ¶ 52. There

---

**10.** Plaintiff contended, in oral argument on this motion, that it may aggregate defendants' market shares to establish market power. It is not clear whether plaintiff contends that it may aggregate *one* defendant's share of several markets or that it may aggregate *all* the station defendants' market shares to establish market power. If plaintiff seeks to aggregate one defendant's share of more than one market, it has offered no factual evidence or legal argument which would permit such aggregation in this case. If plaintiff seeks to aggregate all the station defendants' market shares to establish market power, it may not do so. As noted above, plaintiff does not claim, and the evidence does not show, that the defendants conspired. Absent a conspiracy among defendants, plaintiff may not aggregate the respective market shares of individual defendants to establish market power. If a plaintiff could do so, it could merely sue all its competitors in a given market, aggregate their shares, and thus unfailingly establish market power.

**11.** *See* note 8 *supra.*

is no evidence showing that any one defendant has the power to significantly affect prices, available programming, or any other important market component. Consequently, plaintiff has not offered evidence sufficient to go to the jury on the issue whether a defendant has market power.

To summarize the above, the court holds that the plaintiff has not met its burden of producing evidence which would support a finding that the challenged practices restrain competition. Plaintiff has not shown that the exclusivity practices actually injure competition or that any defendant has market power. Accordingly, the court holds that plaintiff cannot prevail on its rule of reason claim. Defendants are consequently entitled to summary judgment.

The court might end its inquiry at this point. In deference to the enormous record before the court and in the interests of caution, however, the court will proceed to address the parties' other arguments.

■■■ Assuming, contrary to this court's ruling, that plaintiff had offered sufficient evidence of an injury to competition, plaintiff must then show that the exclusivity practices are "unreasonable." The first way plaintiff may establish this is by offering sufficient evidence to show that plaintiff and defendants are not in "substantial competition." If plaintiff is not in substantial competition with defendants, the exclusivity practices are presumptively unreasonable. *See, United States v. Paramount Pictures, Inc.,* 334 U.S. at 144–48, 68 S.Ct. at 922–24. If the parties are in substantial competition, plaintiff must then offer evidence showing that the challenged exclusivity practices are unreasonable given the particular circumstances of this case. *See, e.g., Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49–54, 97 S.Ct. 2549, 2557–59 (1977); *United States v. Paramount Pictures, Inc.,* 334 U.S. at 144–48, 68 S.Ct. at 922–24; *see also,* P. Areeda, *The "Rule of Reason" in Antitrust Analysis: General Issues* (Federal Judicial Center 1981).

■■■ The court will first determine whether there is sufficient evidence in the record to support a finding that plaintiff is not in "substantial competition" with the station defendants. As noted, if the parties are not in substantial competition, then the exclusivity practices are "unreasonable" restraints of trade.[12] *United States v. Paramount,* 334 U.S. at 144–48, 68 S.Ct. at 922–24. The court finds that the evidence that the parties are in substantial competition is so overwhelming that the court may make such a ruling in this summary proceeding. As set forth above, the relevant market herein is the San Francisco Bay Area quality programming market. Even if the court accepted the parties' definition of the relevant market as the South Bay, however, the court would nevertheless find that plaintiff and defendants are in substantial competition in that market.

As noted above, plaintiff argues that it is not in substantial competition with the station defendants because it is a "local" station attracting "local" advertisers. The evidence shows, however, that the station defendants actively compete with plaintiff for viewers, quality programming and advertising in both the San Francisco Bay Area and the South Bay markets. *See,* Fisher Decl. ¶ 4; Davison Decl. ¶¶ 11–13, 38, 39; Plaintiff's Contentions ¶¶ 14, 81, 168 n. 17, 202–04; Park Decl. ¶¶ 21–25, 89, 94; Arbitron Ratings Data (1984) (Ross Declaration); Welch Deposition Exhibit 5; Scheiner Decl. ¶ 9. This evidence, including evidence from plaintiff's own experts, shows clearly that plaintiff and the station defendants are in "substantial competition."

■■■ Given that plaintiff and the station defendants are in substantial competition with each other, plaintiff must now offer evidence sufficient to find the exclusivity practices "unreasonable" under the particular circumstances of this case. If plaintiff cannot submit evidence sufficient to support a finding that the exclusivity practices

12. This, of course, again assumes that plaintiff has produced evidence of injury to competition.

are unreasonable, it cannot prevail on its rule of reason claim. After careful review of the evidence in the record, the court finds that plaintiff has failed to offer evidence to support a finding that the exclusivity practices herein, consisting of the geographic breadth of the exclusivity, the length of the licenses and the alleged rights of first refusal, are unreasonable under the circumstances of this case.

The court holds that no reasonable jury could find that the practices complained of herein are unreasonable. The parties agree that exclusivity, in itself, is a reasonable practice in the television programming industry. Such exclusivity gives the licensee the incentive to promote and develop the licensed program. Without exclusivity, it is likely that no one licensee would expend the resources necessary to fully develop the program. *See,* Bell Deposition 36:6–24, 59:20–60:23; *c.f., Sandura Co. v. FTC,* 339 F.2d 847, 852–53 (6th Cir.1964). Plaintiff itself utilizes exclusive licenses similar to those attacked herein. The exclusive licenses used herein promote competition by maximizing the number of available programs and preventing audience fragmentation for a program. *See,* Thurston Deposition 230:19–20; Maguire Deposition 369:20–370:19, 375:21–376:1; *c.f., Cascade Broadcasting Corp. v. KPDQ, Inc.,* 1976–1 Trade Cases (CCH) ¶ 60,617 (D.Ore.1976); FCC, *First Report on Microwave Relays,* 4 R.R.2d 1725, 1748 (1965). This exclusivity also promotes competition by maximizing the program's value and avoiding overexposure, which can shorten the program's useful life. *See,* Davison Deposition 155:12–156:13; Snyder Deposition 3:4–11, 4:3–1; Thurston Deposition 231:1–2; Park Deposition 23:20–22. Exclu-

sivity also adds to the uniqueness of each station's viewer identity. *See,* Welch Deposition 80:19–23; Bell Deposition 58:8–11, 68:10–16; Boyer Deposition 111:3–6; Thurston Deposition 230:14–16. Exclusivity permits each station to plan programming to compete with another station's programming, with the knowledge that no other station will dilute the value of this competitive programming by airing the same program at the same time. *See,* Hirshey Deposition 276:7–277:8 and Exhibit 14; Wischmeyer Deposition 129:23–130:28; Breen Deposition 476:9–477:13. Exclusive licenses promote competition among suppliers by providing an incentive to maximize the number of programs offered and by maximizing the supplier's revenues from the licenses.[13] *See,* Grayson Deposition 235:13–236:26; Snyder Deposition 17:10–24; Thurston Deposition 230:19–21, 692:24–28, 743:18–22; *c.f., Naumkeag Theatres Co., Inc. v. New England Theatres Inc.,* 345 F.2d 910, 912 (1st Cir.), *cert. denied,* 382 U.S. 906, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); Posner, *The Next Step in the Antitrust Treatment of Restricted Distribution: Per Se Legality,* 48 U.Chi.L.Rev. 6, 15 (1981).

In contrast to this overwhelming evidence of the reasonableness and procompetitive aspects of the defendants' exclusivity practices, plaintiff offers very scanty evidence of the practices' unreasonableness. Plaintiff suggests that defendants' exclusivity practices decrease the number of time slots in which viewers can tune in to a specific program. *See,* Park Declaration at ¶¶ 91–96. This argument, however, does not support a finding that the particular exclusivity practiced here is unreason-

---

**13.** Contrary to plaintiff's argument, there is no evidence showing that a supplier's revenues would be increased by licensing a program, for example M*A*S*H, to both a station defendant and plaintiff. Plaintiff's argument seems to be based upon the faulty assumption that the station defendant would pay the same price as it currently pays for a program which is not exclusive against plaintiff. The evidence shows, however, that a station defendant would *not* pay the same price, but a substantially lower one.

There is no evidence showing that the combined prices paid by a station defendant and plaintiff for the same show would exceed the price currently paid by the station defendant for a license which is exclusive against plaintiff. The evidence, in fact, indicates the contrary. *See, e.g.,* argument of Jessica Pers, supplier defendants' attorney, at August 9, 1984, hearing, and deposition evidence cited immediately after note 13 in the text, *supra.*

able, just that exclusivity generally is unreasonable, which is not plaintiff's claim.

Plaintiff also argues that the exclusivity practices here are unreasonable because not enforced against plaintiff's alleged competitor, non-party KNTV Channel 11. It is undisputed that exclusivity is not enforced against KNTV. The evidence shows overwhelmingly, however, that KNTV is not in the same competitive position as is plaintiff. KNTV's signal coverage begins in San Jose, but extends only south, into the Salinas-Monterey area. The ratings services assign KNTV to that Salinas-Monterey market, from which it draws a majority of its viewers. *See*, Ross Declaration ¶ 11, Exhibit C, Tables 1–3; Fisher Declaration ¶¶ 37–38; Park Declaration ¶¶ 22, 50, 51, 71. Thus, there is a strong factual argument that KNTV 11 is not a "competitor" of the station defendants and, therefore, that defendants' exclusivity practices *should* not extend to KNTV. Even were KNTV in the same position as plaintiff, however, such disparate treatment would not support a finding of unreasonableness. *See, e.g., Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983); *c.f., Ron Tonkin v. Fiat Distrib.*, 637 F.2d at 1387.

Plaintiff also has offered no evidence showing that the length of the licenses and rights of first refusal, if they exist, are unreasonable under the circumstances of this case. It is interesting to note that plaintiff itself obtains licenses with similar terms. *See*, Crocker Declaration. This scanty evidence is entirely unpersuasive, and cannot overcome the overwhelming evidence submitted by defendants that their exclusivity practices, including the length of the licenses and any rights of first refusal, are reasonable. Accordingly, it is appropriate to summarily hold that defend-

ants' challenged exclusivity practices are reasonable.[14]

In summary, the court holds that defendants are entitled to summary judgment on plaintiff's rule of reason claim. Plaintiff has offered no evidence which would withstand a directed verdict for defendants on the issue whether defendants' challenged practices have injured competition. Because plaintiff cannot show that defendants' practices have injured competition, it cannot prevail on its rule of reason claim. Even if plaintiff could show an injury to competition, however, plaintiff cannot prevail because it cannot show that it is not in substantial competition with the station defendants or that the combined exclusivity practices are otherwise unreasonable under the circumstances of this case. Accordingly, the court hereby grants summary judgment for the defendants on plaintiff's rule of reason claim.

**B. *Conspiracy Claim Against Station Defendants.***

Plaintiff's second antitrust claim is directed against the station defendants. Plaintiff contends that the station defendants have violated Section 1 of the Sherman Act by a *per se* horizontal conspiracy to enforce exclusivity against plaintiff.

Summary judgment should, as the Supreme Court has held, be "sparingly" granted where "motive and intent" play important roles in plaintiff's conspiracy claim and complete discovery may have been obstructed. *Poller v. Columbia Broadcasting*, 368 U.S. at 473, 82 S.Ct. at 491. That is not the situation here. The record here has been fully developed and plaintiff has been given the opportunity to offer evidence to the court supporting its conspiracy claim. No issues of motive or intent have been raised. If, under these

---

**14.** Even if plaintiff offered stronger evidence to prove unreasonableness, the court might still find the practices reasonable as a matter of law where, as here, the facts are undisputed and the court is only required to apply the proper legal standard of "reasonableness" to those undisputed facts. *See, Continental T.V., Inc. v. GTE*

*Sylvania Inc.*, 694 F.2d 1132, 1135 (9th Cir. 1982); *c.f.*, II P. Areeda & D. Turner, *Antitrust Law* ¶ 315 (1978); Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 469–76 (1984).

circumstances, plaintiff fails to present evidence to support its claim that defendants conspired to enforce exclusivity against it, then summary judgment is appropriate. *See, e.g., First National Bank v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 539–44, 74 S.Ct. 257, 258–61, 98 L.Ed. 273 (1954); *Mutual Fund Investors v. Putnam Management Co.,* 553 F.Supp. 620, 624 (9th Cir.1977).

The court will now address the evidence plaintiff offers to determine whether such evidence can withstand summary judgment on this conspiracy claim. For the reasons given below, the court finds that it cannot.

■■■■ Plaintiff's first argument is that the defendants' parallel conduct permits an inference of conspiracy. Even if plaintiff could show that the defendants' conduct with respect to exclusivity is parallel, which defendants dispute,[15] such evidence could not, by itself, support plaintiff's conspiracy claim. *See, Theatre Enterprises v. Paramount,* 346 U.S. at 541, 74 S.Ct. at 259; *Workman v. State Farm Mutual Automobile Insurance Co.,* 520 F.Supp. 610, 620 (N.D.Cal.1981).

Similarly, plaintiff's offered proof of an opportunity to conspire, even if accepted by a fact finder, cannot, even when combined with proof of parallel conduct, support a finding of conspiracy. *See, Kreuzer v. American Academy of Periodontology,* 735 F.2d 1479, 1488 (D.C.Cir.1984); *Hanson v. Shell Oil Co.,* 541 F.2d 1352, 1359 (9th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).

In order to go to the jury on its conspiracy claim, plaintiff must submit some sort of proof that the defendants actually conspired—some "conscious commitment to a common scheme"—or other special facts permitting a finding of conspiracy. *Mon-*

santo Co. v. Spray-Rite Service Corp.,* — U.S. ——, ——, ——, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775, 785–86 (1984); *see, e.g., First National Bank v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569; *Independent Iron Works, Inc. v. U.S. Steel Corp.,* 322 F.2d 656, 661 (9th Cir.), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963).

Despite extensive discovery, plaintiff offers only one item of evidence to substantiate its claim that the station defendants conspired to enforce exclusivity against it. This one item is telephone calls by KTVU's Mr. Breen to other stations in the area, in which they discussed exclusivity practices. Defendants do not dispute that these telephone calls occurred. Rather, defendants present convincing and undisputed evidence showing that these calls were made *after* the alleged conspiracy began, on advice of counsel after plaintiff threatened litigation concerning exclusivity, and were undertaken to *discover* the exclusivity practices of other stations in the area. *See* Breen Deposition 221:22–222:2; Lutzker Affidavit of June 11, 1982, ¶¶ 4–5. Such overwhelming and uncontested evidence shows that plaintiff's only item of evidence cannot, as a matter of law, substantiate its conspiracy claim. *C.f., Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1280 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984).

■■■ In addition to their evidence rebutting plaintiff's meager evidence of conspiracy, the defendants have submitted overwhelming evidence that their exclusivity practices were undertaken in the exercise of their independent and sound business judgment. *See,* Fisher Declaration ¶¶ 16, *et seq.;* evidence of procompetitive and legitimate purposes set out above, at 18–19; and evidence that the FCC sanctions defendants' exclusivity practices, which is an indicator of an independent procompetitive

---

**15.** *See,* Efigenio Declaration; Bell Deposition Exhibit 6; Thurston Deposition Exhibit 41; Wischmeyer Deposition Exhibit 17. This evidence shows that the defendants' exclusivity practices are different, not identical. Such evidence supports a finding that the defendants' conduct was

not "parallel." *See, e.g., Du Pont Glore Forgan, Inc. v. American Telephone & Telegraph Co.,* 437 F.Supp. 1104, 1125 (S.D.N.Y.1977), *aff'd mem.,* 578 F.2d 1366 (2d Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431 (1978).

practice, *see* 47 C.F.R. § 73.658(m); *Broadcast Music, Inc. v. CBS,* 441 U.S. 1, 13, 99 S.Ct. 1551, 1559, 60 L.Ed.2d 1 (1979); *c.f., Foster v. Maryland State Savings & Loan Association,* 590 F.2d 928 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979). This showing, which makes it more likely than not that defendants' exclusivity practices were the result of independent business judgment, is sufficient to compel summary judgment on plaintiff's conspiracy claim. *See, e.g., Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 884 (8th Cir.1978).

The court is confronted with a situation where the plaintiff has offered no evidence from which a jury could find that the station defendants conspired to practice exclusivity against plaintiff. Despite extensive discovery, plaintiff has found no probative evidence showing a conspiracy. On the other hand, the defendants have submitted extensive, convincing evidence that they did not conspire but, rather, made independent decisions concerning exclusivity in the exercise of sound business judgment. Under the circumstances of this case, the court holds that summary judgment for the station defendants is appropriate on plaintiff's conspiracy claim. *C.f., First National Bank v. Cities Service Co.,* 391 U.S. at 274–90, 88 S.Ct. at 1585–93. Accordingly, the court hereby grants defendants' motion for summary judgment on plaintiff's second claim of a horizontal conspiracy.

### C. *Conspiracy by Miami Valley and ITNA.*

██ Plaintiff's third and last antitrust claim is that defendant Miami Valley illegally conspired with the Independent Television News Association (ITNA) to exclude plaintiff from membership in that organization. The facts underlying this claim are as follow.

The ITNA is a cooperative association which provides non-exclusive news feeds to its members. *See,* Bell Deposition at 129. The price charged for membership in the association is based upon the broadcasting market of the prospective station member.

It is undisputed that, in 1980, plaintiff applied for membership in ITNA. Mr. Novitz, managing director of ITNA, originally indicated that ITNA would charge plaintiff a membership price based upon the size of the San Jose market. Plaintiff's Exhibit 544; Plaintiff's Contentions ¶¶ 214–18; Defendants' Response to ¶¶ 214–18. Shortly thereafter, however, Novitz told plaintiff that its membership rate would be set at the San Francisco price, approximately four times the price originally discussed.

Plaintiff claims that Novitz' action in refusing to give plaintiff membership at a San Jose price was the result of a conspiracy with defendant Miami Valley (KTVU) to exclude plaintiff from the organization. Plaintiff's claim is thus not that it was excluded from membership in ITNA completely, but that it was excluded at anything but the San Francisco membership price.

Plaintiff offers no evidence from which a jury could find that KTVU conspired with ITNA to exclude plaintiff from membership. Plaintiff's only allegation is that KTVU, a board member of ITNA, voted to refuse to permit plaintiff membership at less than the San Francisco market rate. The board, however, consists of seven directors who jointly voted to extend plaintiff membership only at the established San Francisco market rate. *See,* Bell Deposition at 128–148; Davison Deposition at 609–610; Plaintiff's Exhibit 670. This evidence, without more, is legally insufficient to support a finding of conspiracy where, as here, plaintiff offers no proof of improper motive or any illegal concerted action. *See, e.g., Chapman v. Rudd Paint & Varnish Co.,* 409 F.2d 635, 643 n. 9 (9th Cir. 1969); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

Defendants, on the other hand, offer convincing evidence that there was no conspiracy and that ITNA's decision to permit plaintiff membership only at the "San Francisco" price was an independent business decision based upon its established

practices. First, ITNA's membership rates are determined by the prospective member's market as defined by Arbitron's ADI book. PX 578. As noted above, that ratings book puts plaintiff in the same San Francisco market as all the station defendants. Evidence from plaintiff's own employee, Buckmaster, who negotiated with ITNA's Novitz, shows that Novitz did not, at the time of the original negotiations, know that plaintiff was listed in the San Francisco Arbitron market. Buckmaster Deposition 102–04, 120. In addition, KTVU's director Alan Bell's uncontradicted testimony is that KTVU did not conspire to exclude plaintiff from membership, but was perfectly willing to permit plaintiff to join ITNA at the same San Francisco price which KTVU paid for membership. Bell Deposition 133, 141.

The court finds that plaintiff cannot, as a matter of law, prevail on its ITNA conspiracy claim. First, plaintiff offers no proof of conspiracy. Secondly, ITNA's decision to abide by its normal pricing structure rather than give plaintiff preferential treatment cannot support such a claim. *See, United States v. Colgate & Co.*, 250 U.S. 300, 306, 39 S.Ct. 465, 467, 63 L.Ed. 992 (1919); *Hatley v. American Quarter Horse Association*, 552 F.2d 646, 652 (5th Cir.1977); *Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1214 (9th Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971); *Bridge Corp. of America v. American Contract Bridge League*, 428 F.2d 1365, 1370 (9th Cir.1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 940, 28 L.Ed.2d 220 (1971). In addition, plaintiff has offered no evidence whatsoever to prove an injury to competition, as opposed to injury to itself as a competitor, or proof that ITNA has market power, to support its conspiracy claim. *See, e.g., Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association, Inc.*, 672 F.2d 1280, 1287 (7th Cir.1982). For these reasons, plaintiff cannot prevail on its ITNA conspiracy claim and defend-

ant Miami Valley is entitled to summary judgment on that claim.

In summary, the court holds that plaintiff cannot prevail on any of its three antitrust claims. There is no evidence in the record to show that the defendants conspired to exclude plaintiff from quality programming or to enforce exclusivity against plaintiff. Nothing in the record shows that defendants acted anything but reasonably in obtaining and enforcing exclusive licenses, or in any other challenged practice. Rather, the record shows that plaintiff is unwilling to pay the going market price for programs or news feeds, and is seeking redress from this grievance by means of an antitrust suit. This is not the purpose of antitrust laws. Antitrust laws were designed to protect free market competition, not the financial success of any particular competitor. Nothing in the record shows that defendants' challenged actions in any way have decreased or injured competition.[16]

In accordance with the foregoing, the court hereby grants defendants' motion for summary judgment on the entire action.

---

**16.** Given the court's disposition of this case, it need not address defendants' argument that the

new Copyright Act exempts these exclusive licenses from coverage under the antitrust laws.